UNITED STATES

v.

**Sergeant James C. ALEF, FR 379–58–2391, United States Air Force Hospital Homestead, Ninth Air Force (TAC).**

**ACM 21879 (f. rev.).**

U. S. Air Force Court of Military Review.

Sentence Adjudged 22 May 1975.

Decided 24 Nov. 1976.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.

DECISION UPON FURTHER REVIEW

EARLY, Senior Judge:

Tried by general court-martial, the accused was convicted, pursuant to his pleas, of sale and possession of cocaine, in violation of Article 92, 10 U.S.C. § 892, Uniform Code of Military Justice.[1] The adjudged sentence extended to a bad conduct discharge, confinement at hard labor for 12 months, forfeiture of $229.00 per month for 12 months and reduction to airman basic. The convening authority reduced the period of confinement and forfeitures to nine months and otherwise approved the sentence.[2]

In our original, unpublished decision, dated 7 November 1975, we affirmed the findings and sentence. However, on 6 February 1976, the Court of Military Appeals vacated our decision and remanded the record of trial with directions to hold further proceedings in abeyance pending that Court's decision in *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976).

In *McCarthy*, the accused was convicted of wrongfully transferring three pounds of marijuana to a fellow soldier "just outside" gate 3 of Fort Campbell, Kentucky. In finding that the court-martial properly exercised its jurisdiction over the offense and the accused, the Court utilized the 12 criteria outlined in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), for measuring service connection, as those terms were used in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and found that four of the *Relford* criteria weighed in favor of the exercise of military jurisdiction. However, in *dicta*, the Court stated:

Merely because the recipient of the contraband was a soldier is insufficient, in and of itself, to establish service connection. *United States v. Hedlund*, 2 M.J. 11 (17 Sept. 1976); *United States v. Moore* [24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976)]. The issue requires careful balancing of the *Relford* factors to determine "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

In the case before us, the stipulated facts and the accused's responses during the inquiry into his guilt-in-fact,[3] reveal that on 2 April 1975, the accused was introduced to Specialist Five Hines at an off-base residence in Carter Ridge, Florida. After indicating an interest in purchasing cocaine, Hines gave the accused his telephone number and invited the accused to call him so that a purchase could be arranged.

Subsequently, Hines informed Special Agent Higgins of the Office of Special Investigations (OSI) of his conversation with the accused and agreed to make a "controlled buy" in the event Hines was later contacted by the accused. At approximately 0800 hours the next morning, Hines received a call from the accused and agreed to meet him at 1230 hours at an off-base lounge in Leisure City, Florida.

At the appointed time and place, the accused met Hines and transferred cocaine to him in exchange for $350.00 which had been provided Hines by Higgins for this purpose. Soon thereafter, the accused was apprehended by Higgins and a detective assigned to the Dade County Public Safety Department.

---

1. The members were correctly instructed that the sale and possession offenses were multiplicious for sentencing purposes.

2. On 5 November 1975, the Secretary of the Air Force directed that the accused be returned to duty with a four-month suspension of his bad conduct discharge and the remaining confinement and forfeitures. This action was accomplished by the Commander, Lowry Technical Training Center, Lowry Air Force Base, Colorado, on 12 November 1975.

3. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

■ It is readily apparent that the factual situation here is substantially identical to the circumstances envisioned by the Court in *McCarthy* in that the existence of a service connection in the cocaine sale offense appears solely dependent upon the military status of the recipient thereof. Of further significance is the fact that Hines was not a true "victim" in the *Relford* sense since his participation in the crime was supervised by a Government agent. Nevertheless, we believe that the offense, when considered in light of its multiplicious counterpart, the possession of cocaine, is service connected.

Initially, contrary to the view expressed in *United States v. Hedlund* and *United States v. McCarthy*, both supra, we are not convinced that status alone is always insufficient, in and of itself, to support the exercise of military jurisdiction. In addition to listing the five criteria that operated against Relford's contention that his offenses were not service connected, the Supreme Court noted that each victim's relationship to servicemen at the base were "significant aspects" of Relford's crimes. *Relford v. Commandant*, supra, 401 U.S. at page 366, 91 S.Ct. 649. Further, in stressing its disagreement with Relford's claim that the "'apparent distinctions' between this case and *O'Callahan* 'evaporate when viewed within the context of the "service-connected" test,'" the Court noted the "very positive implication in *O'Callahan* itself, arising from its emphasis on the absence of service-connected elements there, that the presence of factors such as geographical and *military relationships* have important contrary significance." *Ibid.*, at pages 367 and 368, 91 S.Ct. at pages 656 and 657. Emphasis supplied.

Finally, after holding that "when a serviceman is charged with an offense committed within or at the geographical boundary of a military post and violative of the security of a person or of property there, that

offense may be tried by a court-martial," the Court concluded:

> We recognize that any *ad hoc* approach leaves outer boundaries undetermined. *O'Callahan* marks an area, perhaps not the limit, for the concern of the civil courts and where the military may not enter. The case today marks an area, perhaps not the limit, where the court-martial is appropriate and permissible. What lies in between is for decision at another time.

Ibid., at page 369, 91 S.Ct. at page 659.

The Supreme Court's recognition that *Relford* may not mark the limit of cases where court-martial is permissible was reinforced by its language in *Schlesinger v. Councilman*, supra, wherein the respondent asserted that the charges preferred against him, wrongful sale, transfer and possession of marijuana, were not service connected. Councilman, like the accused here, had allegedly transferred small quantities of marijuana to Specialist Four Skaggs, an enlisted man working as a detachment undercover agent. At the time of these transfers, both Councilman and Skaggs were off-post, not in uniform and off-duty.

Though it expressed no opinion whether Councilman's offenses were in fact service connected,[4] the Court noted the Solicitor General's statement that "drug abuse is a far more serious problem in the military context than in civilian life," and opined:

> It is not surprising, in view of the nature and magnitude of the problem, that in *United States v. Beeker*, 18 U.S.C.M.A. 563, 565, 40 C.M.R. 275, 277 (1969), the Court of Military Appeals found that "use of marihuana and narcotics by military persons on or off a military base has special military significance" in light of the "disastrous effects" of these substances "'on the health, morale and fitness for duty of persons in the armed forces.'"

---

4. The lower courts had found no service connection in this factual context. See *Councilman v. Laird*, 481 F.2d 613 (10th Cir. 1973). Of course, this case has dubious precedential value in light of the Supreme Court's decision.

**320**

Schlesinger v. Councilman, supra, 420 U.S. at 760, n. 34, 95 S.Ct. at 1314.

■ Thus, while the opinion in *McCarthy* criticizes the use of military status as the sole ground for the assertion of military jurisdiction, it is clear that it is the status of the drug transferee or drug possessor that is significant in applying the *Relford* criteria of "threat to the base" and "flouting of military authority." For, it is the fact that the military drug user may be unable to perform his assigned military duties because of the use of drugs that constitutes the "threat to the base", and that creates the overriding military interest "that can[not] be vindicated adequately in civilian courts." *Schlesinger v. Councilman, supra.* Other federal courts, in analyzing the service connection of drug offenses committed by servicemen, have seized upon this aspect of the drug offense as the most significant ground for military jurisdiction. In *Peterson v. Goodwin*, 512 F.2d 479, 480 (5th Cir. 1975), the court found:

> Heroin addiction among servicemen at an Air Force base poses a unique threat to the operation of the base. Unless the airmen can respond quickly to orders and adequately operate the complicated weapons and material subject to their use, the base will be unable to fulfil its vital functions in the defense of our Nation.
>
> \* \* \* \* \* \*
>
> Heroin addiction presents a serious threat to the good order and discipline of our armed forces. A court-martial has power to deal with that threat. We hold that the sale of heroin by one airman to another is sufficiently related to the functioning of the armed forces for a court-martial to acquire jurisdiction over the offense and the offenders, notwithstanding the attenuating circumstances that at the

time of sale both airmen were off base, off duty, and out of uniform.

Further, as recognized in Committee for *GI Rights v. Callaway*, 171 U.S.App.D.C. 73, 83, 518 F.2d 466, 476 (1975):

> The increased incident of drug abuse in the Armed Forces poses a substantial threat to the readiness and efficiency of our military forces. Unlike the civilian population, the military forces are charged with the responsibility of continuously protecting the nation's interests both on the domestic and international level. Widespread use of marijuana, hashish and other drugs can have a serious debilitating effect on the ability of the Armed Services to perform their mission.[5]

In our opinion, these cases indicate that the Supreme Court is inclined to approve the exercise of military jurisdiction over most drug offenses whether committed on or off base. Such crimes may simply be categorized within the *Relford* criteria as a "flouting of military authority" and a "threat to a military post," as this Court has recently held.[6] Such result would be consistent with the Supreme Court's view that a service connection "issue turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman, supra*, 420 U.S. at 760, 95 S.Ct. at 1314.

Here, the offenses involve the wrongful off-base possession and sale of cocaine, a narcotic drug. Aside from the single circumstance that the recipient of the drug was a serviceman, none of the factors relied on in *McCarthy* to establish service connec-

5. It appears to us that the recognition of the greater degree of "threat" posed by a serviceman's use of dangerous "hard" drugs as contrasted to the use of marijuana has prompted the difference in holdings of the lower courts with respect to the treatment of the military jurisdictional issue. Cf. *Cole v. Laird*, 468 F.2d

829 (5th Cir. 1972) and cases cited therein with *Peterson v. Goodwin, supra.*

6. *United States v. Campbell*, 2 M.J. 689 (A.F. C.M.R. 19 Oct. 1976); *United States v. Smith*, 2 M.J. 1235 (f. rev.) (A.F.C.M.R. 22 Oct. 1976); *United States v. Tinley*, 2 M.J. 694 (A.F.C.M.R. 4 Nov. 1976).

tion are present.[7] Nevertheless, we find that this circumstance as well as the nature of the drug possessed and sold are sufficient to support the exercise of military jurisdiction in this case. The unique demands of the military service upon its personnel in the performance of their vitally significant duties create a responsibility that is vitiated by illegal drug abuse. The effect of such abuse on the civilian community is, therefore, obviously less detrimental than on the armed forces. As we said in *United States v. Campbell*, supra:

> Whatever might have been the ultimate result had the accused been tried in civilian courts, the military interest in eradicating transfers of drugs between servicemen is far different from the civilian interest in controlling the drug problems in society. It is obvious that the ability of the civilian community to tolerate drug abuse is considerably different from the military. Indeed, with the possible exception of police and firemen, there is no exact counterpart to the requirement that servicemen be physically capable of responding at any time to a recall to duty. This peculiarity of the offense in relation to the military way of life is, in our opinion, the very nature of the "service connection" alluded to in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and defined in *Relford*, supra.

It is this factor that is vital to the "appropriate exercise" of military jurisdiction. *Gosa v. Mayden*, 413 U.S. 665, 677, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

We find that the military properly exercised its jurisdiction over the off-base possession and sale of cocaine by the accused.

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.

---

7. We do not believe that the *Relford* criteria were meant to be the only indicators of service connection, or were to be slavishly applied to the exclusion of all other factors. We read *McCarthy* as adopting the *ad hoc* approach to the exercise of jurisdiction as set forth in *O'Callahan*, supra, and emphasized in *Relford*, supra.