UNITED STATES

v.

Sergeant Emmie L. MOORE, FR 101–40–4463 1369th Photographic Squadron Eighth Air Force (SAC).

ACM 22110.

U. S. Air Force Court of Military Review.

Sentence Adjudged 11 June 1976.

Decided 14 Jan. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before BUEHLER, HERMAN and OR-SER, Appellate Military Judges.

## DECISION

ORSER, Judge:

Contrary to her pleas, the accused was convicted by a general court-martial, with members, of three specifications alleging sale of heroin, and one specification alleging wrongful possession of the controlled drugs, methadone, diazepam and methaqualone, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934. The approved sentence is a dishonorable discharge, confinement at hard labor for 12 months, forfeiture of all pay and allowances and reduction to the grade of airman basic. The Federal Correctional Institution, Terminal Island, California, was designated as the place of confinement.

Although appellate defense counsel have assigned a total of five alleged errors, for purposes of this decision we need discuss only two:

(1) a contention that all charges should be dismissed for lack of jurisdiction; and

(2) a claim that the military judge erred, prejudicially, by failing to adequately instruct the court on accomplice testimony.

With reference to the first issue, having carefully considered the record in light of the guidance provided in *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976), we find sufficient service connection to sustain the exercise of military jurisdiction as to the three offenses involving the sale of heroin by the accused to other servicemen. The first offense alleges, in a single specification, a multitude of individual sales of heroin over an extended period of time. Many of the sales wholly occurred on-base, some occurred off-base. The two separately charged heroin offenses are subsequent off-base sales to the same servicemen who were shown to be buyers in the first charge.

As to the initial offense, the on-base situs of as many as half, and possibly more, of the constituent transactions is a circumstance of itself sufficient to confer jurisdiction for trial in the United States Air Force. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). Moreover, our recent decisions of *United States v. Guillot*, No. 22104, 2 M.J. 729 (A.F.C.M.R. 10 December 1976); *United States v. Campbell*, 54 C.M.R. 447, 2 M.J. 689 (A.F.C.M.R.1976); *United States v.*

*Tinley,* 54 C.M.R. 255, 2 M.J. 694 (A.F. C.M.R.1976); *United States v. Alef,* 54 C.M.R. 480, 2 M.J. 317 (A.F.C.M.R.1976); and *United States v. Gash,* 54 C.M.R. 463, 2 M.J. 707 (A.F.C.M.R.1976), are dispositive of the jurisdiction issue as to the remaining two heroin sale offenses. Though these offenses took place wholly off-base, the record establishes they occurred a little over two months after the succession of on-base/off-base transactions involved in the initial charge. In context, though these sales were separate for punishment purposes, they were at the same time further incidents of a continuing sales arrangement formulated and commenced on the base. *United States v. Gash, supra.*

In specific terms of the *Relford* criteria, against which we are required to measure service connection, (*United States v. McCarthy, supra*; *United States v. Hedlund,* 54 U.S.C.M.A. 1, 54 C.M.R. 1, 2 M.J. 11 (1976), the Government's proof demonstrates a pervasive military interest in both off-base heroin offenses. Although there is no indication the specific intent for the crimes was formulated on the installation, as was the case in *McCarthy,* sale of the highly addictive and deleterious narcotic drug posed a substantial threat to military personnel and hence, to the military community itself. It is clear from the record that the accused was extensively involved as a dealer of heroin to a military consuming public. It is equally clear that the reputation she acquired as a result of her on-base sales motivated the buyers to seek her out at her off-base quarters. Under the circumstances, though the accused and her customers may have been off-duty when the offenses occurred, the parties were by no means "blended into the general civilian populace" in the sense intended by the Court in *United States v. McCarthy, supra.*

On the basis of the foregoing, the military community had the overriding, if not the singular interest, in prosecuting all of the off-base heroin offenses, along with the one that occurred partly on and partly off the base. See *Peterson v. Goodwin,* 512 F.2d 479 (5th Circuit 1975), cert. denied, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1976); see also *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) and this Court's decision in *United States v. Rock,* 49 C.M.R. 235, 238 (1974), concerning the forum appropriateness implication of *Gosa.* In our judgment, the demonstrated distinct military interest in the offenses could not be adequately vindicated by trial in the civilian courts. *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

■ As to the remaining drug possession offense, the record shows the proscribed drugs were discovered in the accused's off-base apartment in Lompoc, California, during a search authorized by a civilian judge. The record contains no indication that the accused either used, purchased, introduced, or sold any of the three referenced substances on the military installation.

Here, as in the recently decided case of *United States v. Williams,* 25 U.S.C.M.A. 176, 54 C.M.R. 284, 2 M.J. 81 (1976), the record supports only a conclusion that the drugs were for the personal off-base, off-duty use of the accused. On the authority of *Williams,* in further light of the principles discussed in *United States v. McCarthy,* and *United States v. Hedlund,* both *supra,* the foregoing circumstances are not sufficient to warrant the exercise of court-martial jurisdiction, and this charge must accordingly be dismissed.

We turn now to the defense assertion of instructional inadequacy. Respecting this issue, appellate defense counsel specifically contend the military judge erred prejudicially by not providing the court members with comprehensive guidance governing consideration of testimony supplied by accomplices. The following facts and circumstances are pertinent to counsel's argument.

The accused's complicity as to all three heroin offenses was established through the testimony of two principal Government witnesses, Airmen Tinley and Brannan. Respecting the initial charge, which, as observed, involved a continuing course of con-

duct, the airmen testified that on many occasions during a seven-month period they purchased heroin from the accused and a cohort of the accused named Baker. As to the other charged offenses, Airman Tinley testified he was the buyer on both occasions.

From our scrutiny of the record it is clear that the Government's proof of the accused's involvement as to all heroin offenses consisted of the uncorroborated testimony of the two witnesses. The testimony of one verified that of the other to a certain degree, however, no corroboration was furnished thereby. Standing as a bar to that notion is the principle that the testimony of one accomplice cannot serve to corroborate that of another. *United States v. Williamson*, No. S24412, 2 M.J. 597 (A.F.C.M.R. 13 October 1976); *United States v. Thompson*, 44 C.M.R. 732 (N.C.M.R.1971). And, of corollary pertinence, in this case both witnesses must be categorized as accomplices since they were culpably involved with the accused, as purchasers, in every heroin transaction at issue. *United States v. Allums*, 5 U.S.C.M.A. 435, 18 C.M.R. 59 (1955).

Both Tinley and Brannan's credibility was extensively attacked by the defense. In the first place, both testified under grants of immunity. Airman Tinley was tried prior to the accused for transfer, possession and use of heroin stemming from his apprehension following a transaction with the accused. He testified it was his understanding that his testimony against the accused would help him "to a certain degree." Airman Brannan stated his belief that he could not be subjected to punitive action on the basis of his testimony against the accused, though administrative action was pending.

Of further relevance, both Tinley and Brannan admitted to extensive drug involvement. In their testimony they demonstrated they were quite conversant with drug terminology and had a thorough understanding of the use and effects of various drugs and narcotics. Tinley testified, among other things, that he had used marihuana about 40 times, heroin on at least 100 occasions, and various other drugs on numerous occasions. He also stated that he had continued to use heroin even after his apprehension on a heroin charge, and admitted having lied in a pretrial statement to the contrary in order to protect himself. Brannan's drug involvement was equally extensive. He testified he had repeatedly used heroin, indulged in marihuana as many as 500 times, and used several other drugs on various occasions. Brannan, like Tinley, admitted to having lied as to certain matters involving his own misconduct, but not concerning his testimony against the accused.

While Tinley's testimony was generally uncontradictory and certain, it was not totally without flaws. For example, he testified he had purchased heroin at Baker's quarters on approximately ten occasions as contrasted with a pretrial statement that he had done so only once. Tinley explained that his pretrial statement was not truthful as at the time he wished to protect Baker. He also admitted he was under the influence of heroin during one of the occasions he purchased heroin from the accused. Further, contrary to Brannan's recollection, he did not recall accompanying the other airman on the date the latter testified the second charged heroin sale occurred.

Brannan, in his testimony, was in general as straightforward and certain as Tinley. About the only noteworthy exception concerned the number of times he said he had used heroin. He admitted there was a substantial difference between his assertion he had used heroin over 100 times and his estimate that he had purchased the drug from Baker and the accused a total of 55 times and never from anyone else. His explanation was that the 100 time use estimate was actually based on the amount of money he had invested in the drug during the ten month period of time involved.

With the foregoing circumstances before the court, the military judge, in his prefindings instructions advised the members *inter alia*:

> With regard to the testimony of . . . . Tinley and Brannan, by their testimony

they have indicated that they were involved in the illegal purchase of drugs. That is their testimony involved the accused. Under their testimony they have indicated they were accomplices. The testimony of an accomplice, even though apparently credible, is of doubtful integrity and is to be considered with great caution. A witness' testimony need not be rejected, however, simply because he is an accomplice and the weight to be given to such testimony is a matter for your determination.

The military judge also generally instructed the members on the credibility of witnesses. With further reference to Tinley and Brannan, he categorized them as informers and advised the court that "the testimony of an informer, or any witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should always be considered with caution and weighed with great care." Finally, the judge drew the attention of the members to trial references that indicated the witnesses had made inconsistent statements and informed them such matters could be considered in determining the witnesses' credibility.

At the conclusion of the findings instructions, the defense counsel indicated he had no objections nor requests for additional instructions. Appellate defense counsel nevertheless contend that their trial counterpart's acquiescence should not preclude relief before this Court. Counsel specifically charge error of prejudicial magnitude in the military judge's failure to instruct the court on the legal effect of uncorroborated accomplice testimony.

 As indicated in appellate counsel's complaint, with respect to a witness' credibility, it is settled law that a conviction cannot be based upon the uncorroborated testimony of an accomplice if such testimony is self-contradictory, uncertain or improbable; and, even when apparently corroborated and apparently credible, accomplice testimony adverse to the accused is deemed of questionable integrity and must be considered with great caution. Manual

for Courts-Martial, 1969 (Rev.), paragraph 153*a*. The cited Manual text specifies that, "when appropriate, [these] rules should, upon request by the defense, be included in the general instructions of the military judge."

 It is generally the rule that a failure to request an instruction on uncorroborated accomplice testimony precludes appellate assertion of such issue. *United States v. Diaz*, 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972); *United States v. Weeks*, 15 U.S.C.M.A. 583, 36 C.M.R. 81 (1966). This restriction on review is not, however, without qualification. The outer limit is that appellate Courts "will notice on review those instances where the absence of an instruction on the necessity of corroboration of an accomplice's testimony has resulted in plain error or a miscarriage of justice." *United States v. Diaz, supra. United States v. Stephen*, 15 U.S.C.M.A. 314, 35 C.M.R. 286 (1965); *United States v. Lell*, 16 U.S.C.M.A. 161, 36 C.M.R. 317 (1966). In more specific terms, when such testimony is of "pivotal importance to the Government's case," the military judge must instruct *sua sponte* on the effect of accomplice testimony. *United States v. Gilliam*, 23 U.S.C.M.A. 4, 48 C.M.R. 260 (1974); *United States v. Lell* and *United States v. Stephen*, both *supra*. An example of "pivotal importance" is the exceptional situation where the accomplice is the crucial Government witness on whose *credibility* the guilt or innocence of the accused hinges. *United States v. Gilliam, supra*.

 In the case at hand, it is clear beyond peradventure that Tinley and Brannan were accomplices of the accused and that their testimony was uncorroborated. As observed, such testimony constituted the only evidence implicating the accused in the purported heroin sales. Obviously, therefore, the testimony of the two witnesses was of crucial importance to the Government. It scarcely needs be said that the outcome of the case totally depended on their worthiness of belief. With the evidence in such posture, and in further light of the recited matters significantly affect-

ing the witnesses' credibility, an unabbreviated accomplice instruction was imperative to permit the court to properly deliberate on the accused's guilt or innocence as to all the heroin offenses. In *United States v. Stanley*, No. S24106 (A.F.C.M.R. 24 February 1975) (unpublished), in circumstances closely parallel to those now before us, we found prejudicial error in the military judge's failure to give a comprehensive accomplice instruction.[1] In *Stanley*, as here, the witnesses were uncorroborated accomplices, had past involvement with drugs and were accorded leniency with respect to their own complicity in the charged offenses. In light of those circumstances, and on the further basis of our determination that the testimony was self-serving, we concluded that an unabbreviated accomplice instruction was essential in spite of the fact that the witnesses' testimony may not have been particularly self-contradictory, uncertain or improbable.

We reach that same conclusion here. In our opinion, the witnesses' status and the other recited credibility factors had a direct bearing on the probability, plausibility or reliability of their testimony and an instruction in those terms was required. Stated another way, the Court should have been advised that in determining whether the accomplice testimony was, among other things, probable, that is, "apparently credible," (as provided in the Manual, *supra*) they were to consider the evidence bearing on the witnesses' believability. We find, therefore, that in failing on a *sua sponte* basis to provide the court members the uncorroborated accomplice instruction contemplated by paragraph 153a of the Manual, the military judge erred to the substantial prejudice of the accused.[2]

In these circumstances, we deem it inappropriate to simply test for prejudice at this level by reviewing the testimony of the witnesses for the presence or absence of self-contradiction, uncertainty or improbability. We are aware that procedure was employed by the Court of Military Appeals in *United States v. Diaz, supra*, a case involving a similar instructional omission. However, in *Diaz*, though the Court considered the accomplice witness' testimony self-serving, there were no other indicated factors affecting his credibility. Here, in light of the extensive impeachment evidence, the accused was entitled to have his guilt or innocence decided by properly instructed court members who had the opportunity to both see and hear the witnesses and were thus in a better position than this Court to determine whether their testimony was without need for corroboration to be sufficient for conviction. See Article 66(c), Code, 10 U.S.C. § 866(c), *supra*.

For the reasons stated, the findings of guilty and the approved sentence are incorrect in law and are hereby set aside. The charge as to which we found no service-connection (Additional Charge I and its Specification) is dismissed. A rehearing may be ordered as to the others.

BUEHLER, Senior Judge, and HERMAN, Judge, concur.

---

1. On a *sua sponte* basis as to one witness; at the request of the defense as to a second.

2. A model instruction incorporating the germane Manual and case-law provisions is contained in Air Force Manual 111–2, Courts-Martial Instructions Guide, paragraph 6–2, 15 October 1971. Though the military judge utilized this paragraph in formulating the instruction he gave respecting accomplice testimony, he did not incorporate the important portion thereof which discusses the legal effect of uncorroborated testimony of an accomplice. Department of the Army Pamphlet 27–9, Military Judge's Guide, paragraph 27–9, 19 May 1969, contains an excellent model instruction on accomplice testimony which may be tailored as particular circumstances dictate.