UNITED STATES

v.

Staff Sergeant Rodney C. BAKER, FR 031–36–1886, 4392d Transportation Squadron, Fifteenth Air Force (SAC).

ACM 22116.

U. S. Air Force Court of Military Review.

Sentence Adjudged 10 June 1976.

Decided 19 Jan. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain William T. Snyder.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

LeTARTE, Chief Judge:

Contrary to his pleas and Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, the accused was convicted of selling lysergic acid diethylamide (LSD), and of three specifications alleging sales of heroin, two specifications of using heroin and a single specification of transferring heroin, the latter offenses being alleged as violations of Article 134, 10 U.S.C. § 934. He was sentenced to dishonorable discharge, forfeiture of $300.00 per month for 18 months, confinement at hard labor for 18 months and reduction in grade to airman basic. The convening authority disapproved the findings of guilty of Specifications 4 and 5 of the Additional Charge (wrongful use and sale of heroin), and approved the sentence as adjudged.[1]

Appellate defense counsel have assigned 15 errors for our consideration, but we deem it unnecessary to discuss all of these. Some are without merit and others are rendered moot by our disposition of those remaining.

■ Except for the LSD sale offense (Charge I and its specification), which allegedly occurred on 1 March 1976, at Lompoc, California, all of the offenses were charged as continuing course of conduct over a period of several months in 1975 and 1976. For the most part, the Government's evidence against the accused was furnished by three airmen, Tinley, Monhollen and Brannan, who testified under grants of immunity. According to their testimony, on divers occasions during the period from 1 July 1975 through 31 December 1975, the accused used and sold heroin at Vandenberg Air Force Base, California (Specifications 1 and 2, Additional Charge). Similarly, from 1 January 1976 until 11 May, on many occasions, the accused sold heroin at Lompoc, California (Specification 3, Additional Charge).[2]

■ Monhollen's testimony related solely to the LSD sale on 1 March 1976, and to two sales of heroin which took place on the same day. At the time of these offenses, Monhollen was acting as an informant for the Air Force Office of Special Investigations (OSI), and his participation in the crimes was monitored by OSI special agents.[3] The other witnesses, Tinley and Brannan, were accomplices in the crimes about which they testified. All three witnesses admitted considerable prior drug abuse. Further, Tinley revealed that he had "lied" in his pretrial statements given

---

1. Since the sentence included reduction to the lowest enlisted grade, the forfeiture should have been reduced by the convening authority to not more than $249.00 per month. Air Force policy provides that when partial forfeitures are imposed by a general court-martial, the convening authority will reduce the forfeiture to not more than two-thirds pay per month computed at the grade, as approved by the convening authority, to which the accused has been reduced. Air Force Manual 111–1(C–2), Military Justice Guide, 8 October 1976, paragraph 7–13a.

2. The military judge correctly ruled that this specification and the Specification of Additional Charge II (alleging divers "transfers" of heroin during the same period at Lompoc, California) were multiplicious for sentencing purposes.

3. Monhollen was granted immunity, nevertheless, for all drug abuse offenses committed by him since 26 February 1974.

under oath,[4] and Brannan related on cross-examination that the OSI agents purposely refrained from advising him of his rights so that his pretrial statement, in which he initially implicated the accused, could not be used against him. Finally, Monhollen testified under the impression that, after trial, he might receive some payment under the OSI Incentive Program for his assistance in bringing the accused to trial.[5]

■ Prior to findings, the military judge instructed the court that Brannan, Tinley and Monhollen were accomplices,[6] "in whole or in part," and that their testimony was thus "of doubtful integrity" and should be considered with great caution, "even though apparently credible." He did not, however, provide the ancillary instruction that "a conviction cannot be based upon . . . uncorroborated testimony given by an accomplice in a trial for any offense, if . . . the testimony is self-contradictory, uncertain or improbable; " nor did he caution the court that even if "apparently corroborated," testimony of an accomplice which is adverse to the accused is of questionable integrity and is also to be considered "with great caution." Manual for Courts-Martial, 1969 (Rev), paragraph 153a.

The military judge also advised the court of the general rules concerning the credibility of witnesses. He added that the three witnesses were informers under the law and that the testimony of an informer, "or any witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should always be considered with great caution and weighed with great care." Finally, the military judge instructed the court that any references to prior inconsistent statements made by the three witnesses were admitted solely for the purpose of impeaching their credibility and could not be considered for the purpose of establishing the truth of the matters asserted therein.[7]

■ At the conclusion of these instructions, the defense counsel indicated he had no objections thereto nor requests for additional instructions. He had, however, earlier requested, without success, that the following instruction be given:

The purpose of this advice [as to accomplice testimony] is to call to your attention a matter affecting the witness' credibility, that is, his motive to falsify his testimony, in whole or in part, because of his obvious self interest under the circumstances. For example, an accomplice may be motivated to falsify his testimony because of his own self interest in obtaining immunity from prosecution and/or leniency for a prior prosecution.

Appellate defense counsel contend that the military judge erred in not giving this instruction. We disagree although certainly the instruction would have provided the court with a more precise yardstick by which to measure accomplice testimony. We are concerned, nevertheless, with the adequacy, in general, of the military judge's instructions pertaining to accomplices.

*United States v. Heitmann*, 46 C.M.R. 1242 (A.F.C.M.R.1973).

---

4. These pretrial statements were partially inconsistent with Tinley's trial testimony. Tinley was granted immunity for all drug abuse offenses admitted in his testimony *and, significantly, for any false official statements previously made to the OSI.* Tinley also testified that he anticipated receiving a reduction in his own sentence imposed at a prior court-martial. However, he did not state, and was not asked by the defense, whether this possible sentence reduction was related to or dependent upon his testimony against the accused.

5. The implication is that this payment was contingent upon Monhollen testifying against the accused. While this type of arrangement should be considered in measuring a witness' credibility, it is not contrary to public policy.

6. Monhollen was not an accomplice since he was acting under the auspices of the OSI, and hence was not criminally responsible for his participation in the crimes with which the accused was charged. *United States v. Scoles*, 14 U.S.C.M.A. 14, 33 C.M.R. 226, 231 (1963).

7. Admittedly, this instruction correctly states the evidentiary rule applicable to the admissibility of prior inconsistent statements for the purposes indicated. As we will discuss later, however, these statements were also relevant for the purpose of determining the consistency of the witnesses' trial testimony and hence the need for corroboration thereof.

■ A conviction cannot be based upon an accomplice's uncorroborated testimony if it is self-contradictory, uncertain or improbable; and even if apparently corroborated and apparently credible, the testimony of an accomplice which is adverse to the accused is of questionable integrity and is to be considered with great caution. Manual for Courts-Martial, supra, paragraph 153*a*; *United States v. Moore*, No. 22110, 2 M.J. 749 (A.F.C.M.R. 14 January 1977). When appropriate, this rule should, upon defense request, be included in the military judge's general instructions. Manual for Courts-Martial, *ibid.*

■ Failure of the defense to request instructions on the weight to be given accomplice testimony may preclude assertion of the error on appeal unless the absence of the instruction has resulted in plain error or a miscarriage of justice.[8] *United States v. Diaz*, 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972). Consequently, when such testimony is of "pivotal importance to the Government's case" in that "the accomplice is the crucial prosecution witness on whose credibility the outcome of the case hinges," the military judge is required to instruct the court *sua sponte* on its effect. *United States v. Gilliam*, 23 U.S.C.M.A. 4, 48 C.M.R. 260 (1974), citing *United States v. Lell*, 16 U.S.C.M.A. 161, 36 C.M.R. 317 (1966) and *United States v. Stephen*, 15 U.S.C.M.A. 314, 35 C.M.R. 286 (1965); *United States v. Moore*, supra.

■ As observed before, Tinley and Brannan's testimony was uncorroborated except as to those offenses committed on 1 March 1976, and their testimony constituted the only Government evidence implicating the accused in the remaining crimes. It follows that the *credibility* of these accomplices' uncorroborated testimony was of "pivotal importance" in establishing the ac-

cused's guilt of most of the offenses charged. *United States v. Gilliam*, supra.

In our opinion, therefore, all of the factors pertaining to the accomplices' credibility "had a direct bearing upon the probability, plausibility or reliability of their testimony." *United States v. Moore*, supra. In other words, this evidence was relevant to the court's determination of whether the accomplices' testimony was self-contradictory, uncertain or improbable so as to activate the rule that the court could not convict the accused on the uncorroborated testimony of an accomplice if such infirmities were perceived therein.

■ Suffice it to say in the case before us that the many factors introduced clearly affecting the credibility of Tinley and Brannan were of such significance as to require that a comprehensive, unabbreviated accomplice instruction be given by the military judge *sua sponte*; and the military judge's failure to do this resulted in substantial prejudice to the accused. *United States v. Moore*, supra.

■ Normally, we would return a case involving an instructional deficiency of this import for a rehearing. However, under the circumstances of this case, we are constrained to pursue an alternate disposition. Prior to findings, the accused elected to testify on the merits for the purpose of establishing that on those occasions in which he was admittedly involved in transferring drugs, he acted only as an agent for the purchaser rather than as the seller or as an agent for the seller.[9] Accordingly, he judicially admitted an on base transfer of heroin to Tinley in September 1975, two off base transfers of heroin to Tinley, one of which was through Brannan, in February 1976, and off base transfers of LSD to

---

8. During Article 39(a), 10 U.S.C. § 839(a), session preceding prefindings argument, the military judge informed counsel that he intended to give the accomplice instruction provided in [paragraph 6–2, AFM 111–2, Court-Martial Instructions Guide, 15 October 1971]. Since this instruction includes the uncorroborated accomplice testimony rule in its entirety, the defense

counsel may have been lulled into believing it was actually given.

9. Notwithstanding this testimony, we are convinced beyond a reasonable doubt that the accused's involvement in the crimes was as a seller or agent for the seller.

Tinley, or Monhollen,[10] and heroin to Tinley and Monhollen on 1 March 1976. Consequently, we may affirm findings of guilty based on these unforced judicial admissions since the rule requiring independent corroborating evidence does not apply to in-court confessions purporting to establish a defense and such testimony waives any instructional deficiencies pertaining to the crimes admittedly committed. Manual for Courts-Martial, supra, paragraph 140a (5); *United States v. Schultz*, 18 U.S.C.M.A. 133, 39 C.M.R. 133 (1969); *United States v. Carson*, 15 U.S.C.M.A. 407, 35 C.M.R. 379 (1965); *United States v. Pruitt*, 12 U.S.C.M.A. 322, 30 C.M.R. 322 (1961).

Having decided that we may affirm findings of guilty of those offenses wherein the accomplices' testimony was corroborated by independent, competent evidence or by the accused's judicial confession, we must next determine whether the military properly exercised its jurisdiction over these crimes. *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

■ Since the heroin sale to Tinley occurred at a place under military control, service connection is evident as to this crime. *Relford v. Commandant*, supra. Moreover, inasmuch as the evidence indicates that the accused's activities involved a continuing course of conduct designed to furnish Tinley, at least, with a habit forming narcotic drug, we believe the exercise of military jurisdiction over the remaining crimes was also proper. *United States v. Moore*, supra; see *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), and this Court's decision in *United States v.*

*Rock*, 49 C.M.R. 235, 238 (A.F.C.M.R.1974), pet. denied (1974), concerning the forum appropriateness implication of *Gosa*.

There is no question but that the military interest in prosecuting these offenses was paramount to that of the civilian community. By his own admission, the accused knew that Tinley, Brannan and Monhollen were servicemen assigned to his unit and were thus his military subordinates. In fact, the accused was Brannan's immediate supervisor. Of utmost significance is the accused's admission that "while on the job," Tinley had frequently asked the accused to purchase heroin for him.

These circumstances lead inescapably to the conclusion that the off-base offenses were service connected. It would be unrealistic to postulate that the off base use of heroin, as well as LSD, by servicemen does not *inherently* affect the military mission. At least two Circuit Courts of Appeal have recognized the military significance of such offenses. In *Committee for GI Rights v. Callaway*, 171 U.S.App.D.C. 73, 83, 518 F.2d 466, 476 (1975), the Court reasoned:

The increased incidence of drug abuse in the Armed Forces poses a substantial threat to the readiness and efficiency of our military forces. Unlike the civilian population, the military forces are charged with the responsibility of continuously protecting the nation's interests both on the domestic and international level. Widespread use of marijuana, hashish and other drugs can have a serious debilitating effect on the ability of the Armed Services to perform their mission. As noted in the extensive evidence

---

**10.** Actually, the accused testified that he thought he had transferred mescaline rather than LSD. In view of this alleged mistake of fact, appellate defense counsel contend that the accused should have been charged, if anything, with attempt to sell mescaline. We disagree. To be available as a defense to this type of general intent crime, the accused's mistaken

belief must have been of such a nature that his conduct would have been lawful had the facts been as he honestly and reasonably believed them to be. *United States v. Anderson*, 46 C.M.R. 1073 (A.F.C.M.R.1973); *United States v. Scheunemann*, 14 U.S.C.M.A. 479, 34 C.M.R. 259 (1964); 21 Am.Jur.2d, Criminal Law, sec. 93.

submitted by the appellants, drug use among GIs in the USAREUR had (a) lessened the on-the-job efficiency of GIs; (b) significantly reduced the number of effective soldiers in the European Command; (c) required the expenditure of enormous amounts of supervisory time to monitor all aspects of the drug control and rehabilitation process; (d) strained the limited medical resources of the European Command; (e) created a significant health threat; and (f) resulted in an increased incidence of crime.

This reasoning is supported by the following conclusion reached by the Court in *Peterson v. Goodwin*, 512 F.2d 479, 480 (5th Cir. 1975), cert. denied, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1976):

Heroin addiction among the servicemen at an Air Force base poses a unique threat to the operation of the base. Unless the airmen can respond quickly to orders and can adequately operate the complicated weapons and material subject to their use, the base will be unable to fulfill its vital functions in the defense of our Nation.

* * * * * *

Heroin addiction presents a serious threat to the good order and discipline of our armed forces. A court-martial has power to deal with that threat. We hold that the sale of heroin by one airman to another is sufficiently related to the functioning of the armed forces for a court-martial to acquire jurisdiction over the offense and the offenders, notwithstanding the attenuating circumstances that at the time of sale both airmen were off base, off duty, and out of uniform.

Further, the Supreme Court of the United States has similarly recognized the military significance of drug abuse within the armed forces. In *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), footnote 34, Mr. Justice Powell noted for a majority of the Court:

It is not surprising, in view of the nature and magnitude of [the military drug abuse] problem, that in *United States v. Beeker*, 18 U.S.C.M.A. 563, 565, 40 C.M.R.

275, 277 (1969), the Court of Military Appeals found that "use of marihuana and narcotics by military persons on or off a military base has special military significance" in light of the "disastrous effects" of these substances " 'on the health, morale and fitness for duty of persons in the armed forces.' "

We are in complete agreement with these expressions of opinion. Additionally, we believe our conclusion, considering the circumstances of the instant case, is consistent with the Court of Military Appeals' decision in *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976) (service connection found in the wrongful transfer of three pounds of marihuana to a fellow soldier "just outside" the gate of the military installation), and not inconsistent with the Court's opinion in *United States v. Williams*, 25 U.S.C.M.A. 177, 54 C.M.R. 285, 2 M.J. 81 (1976) (wrongful off base *possession* of hashish not service connected where purchased in the civilian community for personal off post, off duty use).

We conclude, therefore, that the following *Relford* elements support the exercise of military jurisdiction over the offenses in issue:

1. The initial, on base formation of the criminal intent to sell heroin to a serviceman known by the accused to be a member of his military organization.

2. The flouting of military authority.

3. The threat posed to military personnel and hence to the military community itself.

For the reasons stated, the findings of guilty of Charge I and its specification (wrongful sale of LSD on 1 March 1976, at Lompoc, California) are correct in law and fact. Only so much of the findings of guilty of Specification 1 of the Additional Charge as finds that the accused did on one occasion sell heroin at Vandenberg Air Force Base, in September 1975, is correct in law and fact. Only so much of the findings of guilty of Specification 3 of the Additional Charge and the Specification of Addition-

al Charge II as finds that the accused did twice sell or transfer heroin in February 1976 and again on 1 March 1976 are correct in law and fact. The latter specifications are multiplicious for sentencing purposes, with the specification of Charge I. The remaining findings of guilty are hereby set aside and the affected charges are ordered dismissed.

Reassessing the sentence on the basis of the findings herein affirmed and a maximum punishment that includes only four years confinement, we find only so much thereof appropriate as provides for bad conduct discharge, confinement at hard labor for 12 months, forfeiture of $249.00 per month for 12 months and reduction in grade to airman basic.

The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

EARLY, Senior Judge, and FORAY, Judge, concur.