# UNITED STATES

### v.

## Airman First Class Timothy W. YOUNG, FR 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 United States Air Force.

## ACM S25015.

U. S. Air Force Court of Military Review.

Sentence Adjudged 6 June 1980.

Decided 11 May 1981.

---

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Colonel George R. Stevens and Major Robert G. Gibson, Jr.

Appellate Counsel for the United States: Colonel James P. Porter and Lieutenant Colonel Bruce R. Houston.

Before POWELL, KASTL, and MAHONEY, Appellate Military Judges.

## DECISION

POWELL, Senior Judge:

A special court-martial consisting of members convicted the accused, contrary to his pleas, of separate offenses of wrongful transfer and possession of marijuana, violations of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence is a bad conduct discharge, confinement at hard labor for 30 days and reduction to airman basic.

We agree with appellate defense counsel's single assigned error that the military judge's failure to instruct on accomplice testimony prejudiced the accused. We set aside the findings of guilty of the transfer offense and reassess the sentence.

During the early morning hours of 18 April 1980 as the accused drove his automobile onto Chanute Air Force Base, Illinois, he was stopped by an Air Force security policeman for a routine identification check. When a car window was opened, the gate guard thought he smelled marijuana smoke and asked the accused and the three occupants, Airmen Huggins, Robert and Collins, to get out of the car. At the guard's request, the accused gave his consent to search his car. During the search of the individuals, approximately one ounce of marijuana was found on Robert and two ounces of marijuana on Collins. The searches of Huggins, the accused and the automobile produced no controlled substances or other incriminating evidence.

At trial, the accused maintained his complete innocence. Airman Collins testified that the three ounces of marijuana possessed by himself and Robert had been transferred to them by the accused earlier

that night after the three were dismissed from their military class. Collins stated that at his and Robert's request to purchase marijuana, the accused reached under the dash of his car and produced the marijuana which he handed to Robert for the two of them. From approximately 2330 hours to 0300 hours the three of them drove around the base, attended a party on base, went off base to eat, and upon their return were stopped, searched and apprehended. During this time, Collins and Robert smoked marijuana while in the accused's car. Collins accepted non-judicial punishment for his possession and use of marijuana on this date.

On cross-examination, Collins admitted to as many as 15 prior uses of marijuana and that, when apprehended, he lied to the security policemen in explaining his possession of two ounces of marijuana in order to allay their suspicions that he was "dealing" in the substance. To reinforce this denial, he informed the security police that the accused transferred the marijuana to him. He commented on the irony in the possibility of being prosecuted after his cooperation with the authorities in the instant case. Further, he indicated his willingness to lie to his parents in explaining his delayed reassignment from the base because of his Article 15.

Airman Robert, who was Collins' roommate, testified for the defense and stated that the marijuana which he possessed that night was purchased from Collins. The sale took place that same night immediately after class in a restroom in the classroom building. Robert denied that the accused transferred any marijuana to Collins or himself that night and that any marijuana was smoked in the car. He received an Article 15 for his possession of the one ounce of marijuana and also confirmed Collins' previous use of marijuana. Airman Huggins denied smelling any marijuana smoke in the accused's car during his ride with the three airmen from an off-base restaurant to the base. The accused denied transferring any marijuana to Collins or Robert and testified that no one smoked marijuana in his car on the night in question.

Although the military judge instructed the court generally as to the credibility of witnesses, no instruction regarding accomplice testimony was included. The defense did not request such an instruction and had no objection to the instructions given.

Failure to request an instruction regarding accomplice testimony generally precludes consideration of its absence as an issue on appeal. *United States v. Gilliam*, 23 U.S.C.M.A. 4, 48 C.M.R. 260 (1974); *United States v. Diaz*, 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972); *United States v. Westmoreland*, 1 M.J. 706 (A.F.C.M.R.1975), *rev'd on other grounds*, 4 M.J. 91 (C.M.A. 1977). However, when the absence of an instruction has resulted in plain error or a miscarriage of justice, the issue is not waived. *United States v. Diaz, supra; United States v. Lell*, 16 U.S.C.M.A. 161, 36 C.M.R. 317 (1966); *United States v. Stephen*, 15 U.S.C.M.A. 314, 35 C.M.R. 286 (1965). Specifically, the military judge must instruct *sua sponte* on the effect of accomplice testimony when such testimony is of "pivotal importance" to the Government's case. This is the exceptional situation where an accomplice is the crucial prosecution witness upon whose credibility the ultimate question of the accused's guilt or innocence depends. *United States v. Gilliam, supra; United States v. Moore*, 8 M.J. 738 (1980); *United States v. Moore*, 2 M.J. 749 (1977); *United States v. Baker*, 2 M.J. 360 (1977); *United States v. Petrie*, 40 C.M.R. 991 (A.F.B.R.1969). It is of "vital importance" to an accused to call the court members' attention to those matters specifically affecting the witness' credibility. *United States v. Stephen, supra; United States v. Winborn*, 14 U.S.C.M.A. 277, 34 C.M.R. 57 (1963); *United States v. Scoles*, 14 U.S.C.M.A. 14, 33 C.M.R. 226 (1963). This is even more significant when the witness' believability has been seriously attacked. *United States v. Moore, supra; United States v. Baker, supra; United States v. Petrie, supra.*

In this case, Airman Collins was culpably involved in the commission of the

wrongful transfer offense and therefore was an accomplice. *United States v. Scoles, supra; United States v. Allums*, 5 U.S.C. M.A. 435, 18 C.M.R. 59 (1955); *United States v. Petrie, supra.* His uncorroborated testimony is the only evidence proving the accused's guilt of that offense. In view of the defense's showing of Collins' inclination and willingness to lie to his own advantage, the accused was entitled to have the court members fully instructed on the special matters they could consider in determining his worthiness of belief. Normally a rehearing would be ordered but, in the interest of justice, we set aside the finding of guilty as to this offense and reassess the sentence based on the remaining findings of guilty.

For the reasons stated, the finding of guilty of Specification 1 of the Charge is set aside and the specification is ordered dismissed. Only so much of the sentence as provides for confinement at hard labor for 30 days and reduction to airman basic is approved.

The findings of guilty of Specification 2 of the Charge and the Charge and the sentence, as modified, are

AFFIRMED.

KASTL, Judge, concurs.

MAHONEY, Judge (dissenting):

I dissent. Any issue as to accomplice testimony was waived by the trial defense counsel's failure to request such instruction at trial where the alleged deficiency could easily have been cured. *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *United States v. Diaz*, 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972); *United States v. Schreiber*, 5 U.S.C.M.A. 602, 18 C.M.R. 226 (1955); *United States v. Moore*, 2 M.J. 749 (A.F.C.M.R.1977); *United States v. Westmoreland*, 1 M.J. 706 (A.F.C.M.R. 1975), *rev'd on other grounds*, 4 M.J. 91 (C.M.A.1977).

As noted by the majority, exceptions to the waiver doctrine are made for "plain error" or where there is a "miscarriage of justice." As applied in accomplice cases, these terms have become legal euphemisms. They are employed by appellate courts without factfinding powers to mean "we're not sure we would have convicted the accused based solely on the testimony of this weasel."

I have two problems with this approach. *First*, this Court does have factfinding powers.[1] We should not reverse on a deficiency in accomplice instructions, but should ourselves examine the evidence to determine whether the accused is guilty beyond a reasonable doubt.[2] If he isn't, we should reverse on the *facts*, not the law.

*Second*, and more importantly, I don't see the need for an accomplice instruction in any event. All the factors bearing upon the accomplice's testimony, as highlighted in the majority opinion, were brought forcefully to the attention of the court members in evidence and argument.

Those court members were selected as "best qualified for the duty by reason of age, education, training, experience length of service, and judicial temperament." Article 25(d)(2), Uniform Code of Military Justice. Those carefully selected members were clearly instructed by the military judge to apply their knowledge of human nature and the ways of the world in determining the facts in the case. The military judge gave rather standard instructions on witness credibility:

In weighing the evidence, you are expected to utilize your common sense, your knowledge of human nature and of the ways of the world. In light of the circumstances of this case, you should consider the inherent probability or improbability of the evidence.

With regard to witnesses, you are required to determine the credibility of the

---

1. Article 66(c), Uniform Code of Military Justice.

2. *United States v. Diaz*, 22 U.S.C.M.A. 52, 46 C.M.R. 52 (1972); *United States v. Westmore-* *land*, 1 M.J. 706 (A.F.C.M.R.1975), *rev'd on other grounds*, 4 M.J. 91 (C.M.A.1977). *See United States v. Helton*, 10 M.J. 820 & note 5 (A.F.C.M.R.1981).

witnesses, that is, their worthiness of belief. In judging the credibility of the witnesses in this case, you should carefully weigh the testimony. In doing so, consider all the circumstances under which any witness has testified, his or her demeanor while on the stand, the acuteness of their powers of observation, the accuracy and retentiveness of their memory, their interest, if any, in the outcome of the case, their friendships and prejudices, their character as to truth and veracity, the extent to which they are contradicted or corroborated by other credible evidence, if at all, and any circumstances that tend to shed light upon their credibility, taking into account your own experience in dealing with people.

Now, inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit the testimony. In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or willful falsehood. Where conflict or inconsistency appears, it is your function to determine where the truth lies. It is not necessarily the number of witnesses called in support of a particular issue that is determinative of that issue, but it is the force, effect, and convincing character of the testimony given which will be your guide in weighing and giving due credit to the testimony.

The rules I have discussed for determining the weight and value to be attached to the testimony of witnesses apply with equal force to the testimony given by the accused.

You may properly believe one witness and disbelieve several witnesses whose testimony is in conflict with that of the one. You should reconcile the evidence in the case in accordance with the weight and credibility which you, in your best judgement, determine should be given to the testimony of each witness and each piece of evidence. You should not disregard the testimony of any witness without due consideration.

While somewhat verbose, the instruction accomplishes what is necessary: it tells the court members that no mystical rules apply in the courtroom—they are to evaluate human behavior in exactly the same way that they do in their everyday lives. To require a further instruction, to the effect that "you cannot convict solely on the word of one culpably involved with the accused if what he says is uncertain, improbable or self-contradictory," is a redundant overstatement of the obvious.

I believe the time has come to delete any requirement for specialized accomplice instructions in courts-martial. In the words of then Chief Judge Fletcher of the Court of Military Appeals:

> I am convinced that an instruction on the testimony of an accomplice should not be given, requested or not. I believe it is improper to call attention to the testimony of any witness. A general instruction is mandated as to the test of the credibility of all witnesses. Since an instruction of the latter nature was given in the present case, nothing more was required.

*United States v. Lee,* 6 M.J. 96, 98 (C.M.A. 1978) (concurring opinion).