UNITED STATES, Appellee

v

JAKOB LELL, Private First Class, U. S. Army, Appellant

16 USCMA 161, 36 CMR 317

No. 19,011

March 25, 1966

 

*Captain John C. Holzer* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Jacob Hagopian.*

*Captain Richard J. Andriolo* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

The appellant was convicted of two specifications of receiving stolen property, a tape recorder and a transistor radio, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for eighteen months, and reduction. Intermediate appellate authorities affirmed the findings and sentence and we granted appellant's petition to consider whether the failure of the law officer to instruct on accomplice testimony was plain error.

The principal witness against the appellant was a fellow soldier, one Robinson, who admitted that he personally stole the items in question and "sold" them to the appellant. In explanation, he testified:

". . . I owed the accused money at the time and for the items that I sold to him it was knocked off my bill what I owed him."

Thereafter, the following colloquy took place:

"Q [TC] Who suggested this method of reducing your bill?

"IDC: I would object to that as being too broad.

"LO: You're going to have to reframe your question, Captain S. . .

"Q Did you have any conversation with the accused about the amount of money that you owed him?

"A Yes, sir, I did.

"Q And what was the nature of that conversation? What did he tell you?

"A How I could get my bills paid off, sir.

"Q And what was that?

"A Bring him items that he could get money for.

"Q What kind of items?

"A Tape recorders, watches, and items of this nature.

"Q Where were you supposed to get these items?

"A Steal them, sir."

Robinson further testified that he had informed the appellant of the manner in which he had obtained possession of the items in question.

Initially, we must determine whether Robinson and the appellant were accomplices. The Government, in its brief, contends that they were not, since, "As a general rule the thief is not an accomplice of the receiver of stolen property (see Stephenson v United States, 211 F2d 709 (9th Cir 1954); State v Wirtanen, 406 P2d 376 (Mont 1965); Annot., 53 ALR2d 817 (1957)). The existence of accomplice status requires that two persons are punishable for the same offense and theft and the receipt of stolen property are separate substantive offenses." In the alternative, the Government argues, "Even assuming arguendo, that Robinson was an accomplice, the failure of a law officer to charge sua sponte that the testimony of an alleged accomplice should be received with caution is ordinarily not assignable error."

There is no universally accepted definition of the term "accomplice." The courts have accorded to it meanings extending from all persons who participate in the commission of a crime to an associate who knowingly and voluntarily cooperates, aids, or assists in its commission, including accessories before and after the fact. See, generally, 14 Am Jur, Criminal Law, § 109; United States v Scoles, 14 USCMA 14, 33 CMR 226. In United States v Bey, 4 USCMA 665, 16 CMR 239, we adverted at length to the definition of an "accomplice" set forth in Egan v United States, 287 Fed 958 (CA DC Cir) (1923). Therein, at page 965, the court stated:

"Wherever two or more persons engage in the commission of a crime, each will be held guilty to the extent of his participation. This is true, whether they may be prosecuted under the same statute or different statutes."

The question was before us in United States v Scoles, supra. There some German witnesses were knowingly involved in the purchase of stolen Army gasoline. In addition, they had actively participated in the prearranged plans for the theft and purchase, as well as in the drawing of the gasoline from American military tank trucks into their own containers. The Government contended that since these witnesses were not persons subject to the Uniform Code and, hence, could not be tried by court-martial for any of the crimes charged against Scoles, they were not accomplices and a cautionary instruction as to their testimony was not required. We rejected this contention and held that "a witness is an accomplice if he was culpably involved in the crime with which accused was charged. United States v Bey; Egan v United States, both supra." (United States v Scoles, supra, at page 19.)

In Scoles, we limited our opinion on the accomplice question to the sale of military property, which in itself is a separate and distinct offense from that of the theft of such property, and clearly the German witnesses were accomplices in the sale. Here we are faced with a different proposition for only privately-owned property is in-

**163**

volved and there is no similar offense cognizable under the Code with respect to such property.

There is a definite division of authority over whether the thief is the accomplice of the receiver █ or vice versa, with the majority favoring the view that they are not. However, even in those jurisdictions following the majority view, an exception is generally drawn in cases in which it is shown that a conspiracy or prior plan existed between the thief and the receiver. In cases of this kind, accomplice status is said to exist as between them because of a unity of criminal acts in the taking and receiving. For a collation of authorities on this matter, see 9 ALR 1397, 32 ALR 449, 111 ALR 1398, and 53 ALR2d 817.

With one exception, all of the cases listed and discussed in the above-cited annotations are State cases, the exception being that of Stephenson v United States, 211 F2d 702, 53 ALR2d 817 (CA9th Cir) (1954). Stephenson was convicted of receiving a quantity of coffee, property of the United States, which had been stolen from a base warehouse at Nome, Alaska, with knowledge at the time of its receipt that the property had been stolen. The admitted thief testified as to the prearranged plan for theft by himself and delivery to the appellant.

In reversing for failure to instruct as to accomplice testimony, the court stated:

"The authorities are not agreed as to whether the thief is an accomplice of one knowingly receiving stolen property. There is a general rule that he is not. Leon v State, 1920, 21 Ariz 418, 189 P 433, 9 ALR 1393; State v Gordon, 105 Minn 217, 117 NW 483. The usual test to be applied in determining whether the thief is an accomplice is whether the thief could be convicted of the identical crime for which the defendant is being prosecuted. The reasoning underlying the general rule is that larceny and receiving stolen property are separate crimes, and since the thief cannot be convicted of receiving stolen property from himself, he is not an accomplice.

"To the general rule, however, there is increasing recognition of an exception to the effect that where the thief and the receiver of the stolen property enter into an agreement prior to the larceny for one to steal and the other to receive, the thief is an accomplice of the receiver and vice versa. Yeargain v State, 1935, 57 Okl Cr 136, 45 P 2d 1113; State v Keithley, 1928, 83 Mont 177, 271 P 449. The exception is based on the distinction between one who is an accessory before and after the fact and one who is merely an accessory after the fact. The theory is that the previous arrangement between the thief and receiver amounts in effect to a conspiracy for both the theft and receipt of the stolen property. Under such circumstances the usual test for determining an accomplice is met since the thief and the receiver can be prosecuted for both the theft and receipt of stolen property. See, Aaronson v United States, 4 Cir, 1949, 175 F2d 41." [Ibid., at page 704.]

Aaronson was convicted of both larceny and for receiving stolen Government property, although the evidence reflected that he did not take part in the actual taking. He did, however, participate in the planning of the larceny and agreed to receive the merchandise. His defense was based upon the general proposition that a person may not be convicted both of actually stealing goods and of receiving the same goods, knowing them to be stolen, either at common law or under the Federal statutes relating to the larceny of Government property. The Fourth Circuit held that his conviction under the larceny count was justified on the ground that he was a principal in the theft, as defined in Title 18, section 2, United States Code, and since he did not take part in the actual taking, his subsequent acceptance of the goods with

guilty knowledge justified his conviction under the count for receiving stolen goods.

This same circuit, relying on the decision of the Supreme Court in Heflin v United States, 358 US 415, 3 L ed 2d 407, 79 S Ct 451 (1959), subsequently reversed that portion of its holding in Aaronson v United States, 175 F2d 41 (1949), which allowed a *simultaneous* conviction for both stealing and receiving the same goods (Milanovich v United States, 275 F2d 716 (CA 4th Cir) (1960)), but reaffirmed its previous holding with regard to the liability of principals. The Supreme Court agreed but reversed on the ground that the corrective action of setting aside the sentence on the receiving count was insufficient to cure any prejudice from the trial judge's failure to instruct the jury that it could convict of either larceny or receiving, but not of both. Milanovich v United States, 365 US 551, 5 L ed 2d 773, 81 S Ct 728 (1961).

The decisions of this Court as to principals is in accord with the rationale of *Aaronson* and the Federal definition. For a thorough discussion of this question see United States v Wooten, 1 USCMA 358, 3 CMR 92.

Clearly, therefore, if the testimony of Robinson is believed, he and the appellant were accomplices of each other in the offense of larceny as well as in the charged offense. We are well aware that in each of the cases we depend upon for our holding—*Scoles, Stephenson, Aaronson* and even *Wooten* —the property involved was owned by the Government, for which there are specific statutes, both military and civilian, prohibiting the wrongful disposition of such property. This, however, is not controlling for the exception referred to in *Stephenson* is the same regardless of ownership of the property. See 53 ALR2d 817, sections 12 and 13.

What then of the law officer's failure to instruct on the " 'built-in' untrustworthiness" (Lyda v United States, 321 F2d 788, 794 (CA9th Cir) (1963)) of accomplice testimony? None was requested, and as we stated in United States v Schreiber, 5 USCMA 602, 18 CMR 226, at page 609, in general "the absence of a request for special instructions precludes consideration upon appeal. Caminetti v United States, 242 US 470, 61 L ed 442, 37 S Ct 192."

The basic reasoning behind the rule for a special instruction on accomplice testimony was thoroughly explored and set forth in United States v Winborn, 14 USCMA 277, 34 CMR 57, and United States v Scoles, supra, and need not be restated. It is enough to say that the purpose of the advice is to call the court members' attention to a matter specifically affecting the witness' credibility, *i. e.,* his motive to falsify his testimony in whole or in part; and, as stated by the court in Phelps v United States, 252 F2d 49 (CA 5th Cir) (1958), at page 52, "A skeptical approach to accomplice testimony is a mark of the fair administration of justice."

We find the situation herein sufficiently similar to that which pertained in United States v Stephen, 15 USCMA 314, 35 CMR 286, to dictate the same result. The reasoning and cases cited therein as to plain error are equally relevant here.

In the case at bar, the appellant was charged with receiving stolen property which he "then well knew, had been stolen." The accomplice, Robinson, testified that he alone stole the property and, in the interim prior to delivery to the appellant, stored it in the quarters of an associate, one Cooper. Thereafter, he and Cooper "sold" it to appellant, and Robinson informed Lell that the property had been purloined. In contrast, Cooper testified that he and Robinson together stole the radio and that Robinson brought the tape recorder to his billets. Cooper also testified that *he* sold both articles to the appellant, told Lell that they were his personal property, and that at the time of sale Robinson was not even present but was in Cooper's room five barracks away. Cooper also admitted that his prior statement

that Lell had told him and Robinson to steal things and bring them to him to pay off their debts was false. He had made this statement in order to take the blame off of himself and to put it on the appellant.

It is clear that the question of Robinson's credibility was of vital importance to the appellant. Only he testified as to the alleged pre-arrangement and to having informed the appellant of the stolen character of the merchandise. It was especially important to the appellant to have the benefit of a special instruction on accomplice testimony since, in addition, Robinson had been previously convicted of offenses involving moral turpitude (United States v Robertson, 14 USCMA 328, 34 CMR 108), he had a guilty plea deal with the convening authority on the theft of these and other items, that had not yet been acted upon (United States v Winborn, supra), and he personally anticipated further clemency for testifying in this case (United States v Scoles, supra). As stated by Judge Learned Hand in United States v Becker, 62 F2d 1007, 1009 (CA 2d Cir) (1933), "It is usually desirable to give it; in close cases it may turn the scale." Plain error is as apparent here as it was in United States v Stephen, supra.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

In my opinion, the testimony by Robinson that the accused would buy any property from him in reduction of his indebtedness, did not make the accused an accomplice with Robinson in the thefts perpetrated by Robinson. If the accused had been tried for larceny on the theory that he was Robinson's accomplice, the evidence would be wholly insufficient to support a finding of guilty. In any event, this case is entirely unlike United States v Stephen, 15 USCMA 314, 35 CMR 286.

In *Stephen,* the only evidence that a theft had in fact been committed was established by the accomplice's testimony. The accused testified in his own defense, and denied that he took any part in the alleged crime. The record of trial, therefore, demonstrated that the accomplice's testimony was of "vital importance" to the case. *Id.,* at page 318. Here, there is independent evidence that the articles were stolen, and in a pretrial statement by the accused, admitted in evidence, he said he had "got" the stolen property from Private Jackie Cooper. Also, the accused did not testify. Finally, Cooper testified that he, not Robinson, had sold the articles to the accused. He specifically denied the accused had ever told him to "steal things and bring them to him." Cooper can hardly be regarded as an accomplice of the accused. The record of trial, therefore, demonstrates that an instruction on accomplice testimony was not "all-important to the accused's defense," as it was in the *Stephen* case. There is nothing here to bring this case outside the general rule that, in the absence of a request, it is not error to omit an instruction on accomplice testimony. United States v Winborn, 14 USCMA 277, 281, 34 CMR 57, and United States v Schreiber, 5 USCMA 602, 18 CMR 226. I would affirm the decision of the board of review.