UNITED STATES, Appellee

v

RICHARD D. DIAZ, Private, U. S. Army, Appellant

22 USCMA 52, 46 CMR 52

No. 25,475

November 24, 1972

*Captain Francis X. Gindhart* argued the cause for Appellant, Accused.

With him on the brief were *Colonel Arnold I. Melnick* and *Captain Robert H. Dickman.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Glenn R. Bonard,* and *Captain Richard L. Menson.*

## Opinion of the Court

DUNCAN, Judge:

The appellant, Private Richard D. Diaz, was tried and convicted by general court-martial for the offenses of premeditated murder and, in conjunction with Private Luis A. Perez-Perez, assault with intent to commit murder, in violation of Articles 118 and 134, Uniform Code of Military Justice, 10 USC §§ 918 and 934. The Government's successful prosecution was based almost entirely upon the testimony of Perez-Perez. Neither party appears to dispute the presence of facts of record indicative that Perez-Perez was an accomplice of the appellant. In this appeal Diaz urges that the military judge erred to his substantial prejudice by failing to advise the members of the court-martial that they must determine whether the accomplice's testimony required corroboration and was corroborated. In this regard, we discover no prejudicial error.

I

According to Perez-Perez he met Diaz at Fort Buchanan, San Juan, Puerto Rico. They were sent to Fort Jackson, South Carolina, for training where they became friends. Three weeks before August 19, 1970, Perez-Perez was introduced to Specialist Four Hubie Brown by Diaz.

Perez-Perez stated that on August 19, 1970, at about 4:15 or 4:30 p.m., he accompanied the appellant to Brown's room where Diaz and Brown had a conversation. Later, at about 6:15 p.m., Diaz asked Perez-Perez to accompany him on a return trip to Brown's room where Brown and Private First Class Bobby J. Duncan were sleeping in their beds. Diaz opened the door, took a knife from his pocket and handed it to Perez-Perez. Perez-Perez then testified he said, " 'What is this for?' He [Diaz] told me, 'Don't worry about it.' . . . He told me to go in there and stand over Duncan's bed." The witness related that Diaz then removed a knife from under his shirt, crawled over to where Brown was sleeping, stabbed him in the chest, got up and ran from the room. Brown arose, started screaming, and broke the window with his hands and crawled out. Duncan got up and began to struggle with Perez-Perez and was cut, and he (Duncan) fled from the room. Next, Perez-Perez exited the room. He then told someone he had just cut a man. Thereafter, he was taken to an orderly room where he surrendered the knife. Information given to the military police by Perez-Perez led to the apprehension of Diaz. This witness also stated that he did not know Diaz's motive in killing Brown; that he had seen Diaz use drugs; that Diaz had procured drugs from Brown at an earlier date; and that at the time of the incident Diaz was wearing white Levi's.

Private First Class Duncan sustained cuts but survived his assault and was able to identify Perez-Perez as his assailant, but could not identify another man he saw leaving the room. He related that the man he saw leaving was wearing fatigues.

Other Government witnesses testified that:

(1) Diaz and Perez-Perez were seen inside building 9534 in front of Brown's room at 6:15 p.m.;

(2) that the first man seen running from the building wore a short-sleeved checked shirt;

(3) that after the incident, heroin was found in Brown's possession;

(4) a boning knife was missing from the messhall where Diaz worked; and

(5) that Brown's death was caused by stab wounds of the chest.

The appellant did not testify or present evidence.

At the conclusion of the presentation of the evidence and out of the presence of the members of the court, the military judge discussed proposed instructions with counsel. The judge stated:

"There is no question, of course, that Perez is the key witness against Diaz and that he is in fact in law an accomplice. Consequently, I will give the instruction on accomplice testimony found on page 9–25. Now, I will give the standard instruction on accomplice testimony. I will give the statement that under the evidence Perez is an accomplice as a matter of law.

"I will not give an instruction on uncorroborated testimony since I conclude there is ample corroboration of the testimony. Because if I were to give an instruction on corroboration, I would also give an instruction that as a matter of law the testimony of Perez is corroborated, and I don't think I am going to do that. I do believe, however, it has been corroborated. Let me see. Let me double-check my position on this. I will change my statement. I would not instruct as a matter of law the testimony is corroborated. That would be a matter for the court to decide. However, in summarizing the evidence, I feel certain it would end up that the evidence is corroborated. My thought is that I would simply single out that he is an accomplice and that it should be considered with great caution and given only such weight and credibility as they deem it deserves, stating that he has motivations for false testimony. First of all was the dropping of the charge of murder, and secondly was the halving or more of the sentence imposed in his case."

This discussion followed:

"DC: Your honor, we are thinking on accomplice testimony. The court may feel with coming out with accomplice testimony that you yourself believe the acts that Diaz was involved in. We know that we want that testimony in the line of what is said in the accomplice part of the charge, but we would more specifically like it if you go to the charge on credibility of a witness, not only an accomplice.

"MJ: This is credibility.

"DC: Yes, sir, [b]ut with reading your instructions you would indicate that he was acting as an accomplice.

"MJ: I can preface this, if you like, in order to tailor it to your particular state of the evidence, your case in other words, that, if the testimony of Private Perez is believed, then he became an accomplice. But that means they have got to believe Perez in the first place. If they don't believe Perez, they don't have this man present at all, and obviously they can't convict him.

"DC: We will object if you are going to give that type of instruction and phrase it that, if you in fact believe Perez, then you have this charge, this crime and this crime.

"MJ: The only reason that I will not give an accomplice instruction is that, if you specifically object to it and request that I not give it. I think it is helpful to the defense myself.

"DC: We think that the wording of the . . . . .

"MJ: In other words, what you are suggesting—what I will say, 'You are advised that under the state of the evidence, if the testimony of Perez is believed, that Private Perez is an accomplice as a matter of law.'

"DC: Yes, sir.

"MJ: Actually that is redundant. However, I will make the statement, because the statement in the proposed instruction says, 'under the state of the evidence,' and under the state of the evidence implies the testimony of Perez. However, I will insert the expression, 'You are advised that under the state of the evidence if the testimony of Perez is believed, then Private Perez is an accomplice as a matter of law.'

"DC: All right, sir."

After the arguments of counsel, the military judge charged the members of the court, in part, as follows:

"Gentlemen, the co-accused Perez has testified that he was present in the room and participated in the acts alleged by the Government. You are advised that a witness is an accomplice if he was culpably involved in an offense with which the accused is charged. The purpose of this advice is to call to your attention a matter specifically affecting the witness Perez'[s] credibility, that is, his motive to falsify his testimony in whole or in part because of his obvious self-interest under the circumstances. In this case it is alleged, and in effect admitted by the Government and alleged by the defense that Perez was offered by the Government to drop the offense of murder against Brown if he would in fact testify against Diaz, and that failing that he would be offered the opportunity of having his sentence cut in half or less than half if he would testify against Diaz. I will not attempt to summarize the argument of counsel. He very effectively presented to you the defense's position as to the credibility and reliability of the witness Perez. The Government, of course, has called your attention to the facts that tend to corroborate the testimony of the witness Perez. Considering all this evidence, you are advised that the testimony of an accomplice, even though apparently corroborated and apparently credible, is of questionable integrity and should be considered with great caution and be given only such weight and credibility as you deem it deserves. I am not suggesting for a moment that you gentlemen should disregard the testimony. I am asking only that you examine it, considering that this is an accomplice; it should be considered with great caution; and you should only give such weight and credibility to the testimony of Perez, as you believe under all the circumstances of this case that it deserves. I will advise you that under the state of the evidence, if the testimony of Perez is believed, that he is an accomplice as a matter of law."

The judge also generally instructed on the credibility of witnesses. Other than as stated above, defense counsel did not request a special instruction on accomplice testimony and did not object to the instructions.

It fairly can be said that the judge's instructions, as set forth hereinabove, communicated the suspicious attitude that fact finders should maintain in considering the testimony of a witness found to be an accomplice. The appellant here urges error in that the judge "did not instruct the triers of fact, as a matter of law, that the principal prosecution witness (Perez) was an accomplice, but rather left even that threshold question to the court." Next, the appellant argues that the result of assigning this determination to the fact finders the court was required to view Perez-Perez worthy of belief before they could find him an accomplice.

We note that the military judge expressed his desire to instruct the members that Perez-Perez was an accomplice as a matter of law. Only in accommodation of the wish of defense counsel did he charge otherwise. Now appellate defense counsel complain of a result generated by and not objected to by defense counsel.

There are those cases where the evidence is in such a posture that the judge should find a witness an ac-

complice as a matter of law and so instruct the members of the court. There are other cases where a conflicting fact picture demands that the triers of fact decide the question. We believe this case to belong in the first category; however, defense counsel's objection prevented that result.

Submission of the question as a fact issue to the members of the court inherently holds certain risks for an accused who seeks a cautionary instruction regarding the testimony's potential for unreliability. When submitted as a fact question some areas of a witness' testimony must be believed before the accomplice relations can be deemed to have existed. Thereafter, the fact finders are asked to view the balance of a witness' relevant testimony with an eye ready to see untruth. Needless to say such a procedure is not perfect, but it is also not per se unjust. Viewed from the other perspective, a finding by a judge that a witness is an accomplice as a matter of law might be taken by the fact finders as declarative of the judge's persuasion that the accused was involved with the witness in the commission of the offense. Each situation is not without evidentiary awkwardness.

◼ In the instant case, even assuming the submission of the issue to the jury to have been improper, we cannot find that the judge in doing so at the inducement of the defense, abused his discretion amounting to error demanding reversal. It is not a function of a court on review to superintend trial tactics of counsel where the record does not show that counsel were incompetent. In United States v Jones, 7 USCMA 623, 629, 23 CMR 87 (1957), this Court stated:

"... The defense counsel may not at the trial request an instruction and thereafter claim on appeal that he was prejudiced by the law officer's acquiescence in that same request."

We find no merit in the first point discussed.

22 USCMA 56

Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 153a, provides:

"... [A] conviction cannot be based upon uncorroborated testimony given by ... an accomplice in a trial for any offense, if ... the testimony is self-contradictory, uncertain, or improbable. ... When appropriate, the above rules should, *upon request by the defense*, be included in the general instructions of the military judge. ..." [Emphasis supplied.]

◼ This provision is inescapably explicit in requiring that an instruction on uncorroborated accomplice testimony be requested. We do not view the requirement as only a trivial or ceremonious aspect of trial procedure, but a mandatory requirement for review of such an issue. United States v Weeks, 15 USCMA 583, 36 CMR 81 (1966); United States v Schreiber, 5 USCMA 602, 18 CMR 226 (1955); Caminetti v United States, 242 US 470, 61 L Ed 442, 37 S Ct 192 (1917).

Wisely, we believe, this Court has qualified this restriction on review and will notice on review those instances where the absence of an instruction on the necessity of corroboration of an accomplice's testimony has resulted in plain error or a miscarriage of justice. United States v Stephen, 15 USCMA 314, 35 CMR 286 (1965); United States v Lell, 16 USCMA 161, 36 CMR 317 (1966).

The requirement that the testimony of an accomplice be corroborated if the testimony is self-contradictory, uncertain, or improbable is designed to elevate the standard by which the sufficiency of the evidence necessary for conviction is to be judged.

After scrutinizing the record, it is clear that the appellant's conviction is *based* upon the testimony of the accomplice, Perez-Perez, as that term is used in paragraph 153a, Manual, supra. Therefore, if the testimony is self-contradictory, uncertain, or improbable, if uncorroborated, it is

legally insufficient to convict, and plain error is observed.

■ Carefully reviewing the testimony of Perez-Perez we do not deem it to be self-contradictory or uncertain. Clearly, in some respect it differs from the testimony of other Government witnesses. We recognize that some reasonable minds may not find a part or all of his testimony believable while others may. Neither of those characteristics of the testimony provides a predicate for a legal conclusion that the testimony is improbable. He clearly stated that he saw appellant in the room with a knife, and that he (Diaz) stabbed Brown. We cannot say that other aspects of Perez-Perez's testimony are so far beyond belief that the total of his comments must be regarded as improbable. The testimony is without need for corroboration in order to be sufficient for conviction.

## II

Appellant next raises the issue of whether the convening authority and the staff judge advocate were disqualified from reviewing and taking action upon this record of trial. Finding merit in this contention, we answer affirmatively.

The appellant's trial[1] was delayed and Perez-Perez was tried first (February 1–4, 1971). He was sentenced to a dishonorable discharge, total forfeitures, and confinement for 20 years. Prior to that trial the deputy staff judge advocate initiated through defense counsel a request for Perez-Perez's testimony against Diaz in return for a recommendation that the premeditated murder charge be dismissed. The offer then was refused; however, after trial the deputy staff judge advocate and Perez-Perez agreed that for a recommended reduction of one-half of the sentence to confinement, Perez-Perez would testify against Diaz. Thereafter, the staff judge advocate made the sentence reduction recommendation which the convening authority accepted.

Appellate defense counsel submit that the staff judge advocate's action in making the recommendation to reduce Perez-Perez's sentence, effectively tarnished his impartiality to such an extent that the convening authority received partisan advice.

The Government suggests that in this case the staff judge advocate's activity personally was not the same as his deputy's. Moreover, the staff judge advocate was never in a position of any compulsion to vouch for testimony he bargained for. The recommendation and action (in Perez-Perez's case) were taken after the instant case was tried but before the convening authority's action.

In United States v Albright, 9 USCMA 628, 26 CMR 408 (1958), this Court has taken the position that a staff judge advocate who recommends clemency to a convening authority in return for an accomplice's testimony is thereby debarred from reviewing the case.

■ In view of the unitary function of a staff judge advocate's office, the fact that the deal was actually handled by the deputy with the staff judge advocate's knowledge does not seem to offer a realistic basis for distinguishing *Albright*, supra. Nor does the argument of the Government that Perez-Perez was tried before the accused and his review completed only after both trials and before the review of the accused offer any significant basis for distinction. In Perez-Perez's review, the deal was consummated indicating the staff judge advocate had thereby judged him to be a truthful and cooperative witness. When he subsequently reviewed the accused's case, he had already evaluated the credibility of the main prosecution witness and, under the principles noted in *Albright*, supra, and related

---

[1] The appellant's trial was delayed for the reason that a sanity board first determined him incompetent to stand trial. Later, he was determined to be competent for trial and was tried on April 26–28, 1971.

cases, in our view, was disqualified to review the record. Accordingly, this issue is resolved in favor of the accused and the case returned to the Judge Advocate General of the Army for a new post-trial review and action by another convening authority.

Chief Judge DARDEN and Judge QUINN concur.