UNITED STATES, Appellee,

v.

Private First Class James E. COMBEST,
SSN 335–54–8536, United States
Army, Appellant.

CM 440228.

U. S. Army Court of Military Review.

12 Nov. 1982.

Colonel William G. Eckhardt, JAGC, Captain Warren G. Foote, JAGC, and Captain Guy J. Ferrante, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Michael R. Smythers, JAGC, and Captain Richard J. Fadgen, JAGC, were on the pleadings for appellee.

Before FULTON, McKAY and COHEN, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

McKAY, Judge:

This case is before the Court for mandatory review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976) [hereinafter UCMJ], following the completion of a new post-trial review and action by a new convening authority which was earlier ordered by the Court. The appellant, Private First Class Combest, was tried before a general court-martial and was convicted of possession, transfer and sale of heroin on two occasions (4 February 1980 and 6 March 1980). He was sentenced to a dishonorable discharge, confinement at hard labor for five years, reduction to Private E-1, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence, but suspended the confinement portion in excess of twenty-three months with provision for automatic remission. The appellant asserts before the Court that the evidence was insufficient to support the findings of guilty, that the military judge erred by his failure to instruct the court sua sponte on prior inconsistent statements and the proper consideration of the testimony of the paid informant, that his trial defense counsel inadequately represented him, and that the military judge erred by not dismissing the possession and transfer specifications as being multiplicious with the sale specifications.

On 4 February 1980, Specialist Four Singleton, a Government informant, saw the appellant near an on-post dining facility. The two had been acquaintances for a year and a half, and had occasionally smoked hashish together. Singleton ascertained that the appellant had heroin for sale and agreed to make a purchase later that day. Singleton then contacted the local Drug Suppression Team (DST) of the Criminal Investigation Command (CID) and reported his arrangement with the appellant. Agent Kampa arranged to meet Singleton at an off-post location where he searched him, provided him with $40.00 and watched him return to the post. A short time later Singleton met the appellant at the dining facility and they proceeded to the appellant's room where he sold Singleton two packets of heroin for the $40.00. Singleton returned to Kampa and gave him the heroin.

On 6 March 1980, Singleton again found the appellant in possession of heroin. This time the appellant offered to sell four packets of heroin for $80.00. As he had done previously, Singleton contacted the DST. Agent Ludacka met Singleton off post, searched him, gave him $80.00 and watched him return to the post. Singleton went to

the appellant's room where he purchased four packets of heroin for the $80.00. He returned to Ludacka and gave him the four packets.

Testifying at the trial, Singleton admitted his prior drug usage and drug sales. He also testified that he was working for the DST in order to receive leniency on a pending nonjudicial punishment under Article 15, UCMJ, for possession of hashish. Singleton testified further that he wanted to avoid a reduction in grade in order to retain his eligibility to occupy government family quarters and that the CID had "promised" to be light on his Article 15 punishment. They specifically promised him he would not be moved out of government quarters.[1] He further testified that, on the occasion of the sale on 4 February, there was only one other person, who was asleep, in the room. This differed from his testimony at the pretrial investigation under Article 32, UCMJ, during which he testified there were several others present in the room at the time of the sale.

After the presentation of evidence, the military judge gave the members the standard general instruction from the Judge's Guide, *U.S. Dep't of the Army, Pamphlet No. 27–9, The Military Judges' Guide* (1969), on the credibility of witnesses. The appellant did not object or request any additional instructions.[2]

## I. Failure of Military Judge to Instruct on Prior Inconsistent Statements

 The appellant's contention that he was prejudiced by the lack of any instruction concerning prior inconsistent statements is without merit. The alleged inconsistent statements to which the appellant refers are Singleton's testimony at trial that the 4 February sale occurred in the dining facility rather than the appellant's room in the barracks, and with respect to how many people were present at the time the sale took place.

We find that there was in fact no inconsistent statement by Singleton on where the sale occurred. At the trial, Singleton testified that he met the appellant at the dining facility and that they proceeded to the appellant's room where the sale actually took place. As established on cross-examination, this was consistent with his testimony at the Article 32 investigation. On the other hand, however, Agent Kampa, who did not observe the sale, testified that he told Singleton to go to the dining facility and make a purchase. He further testified in response to a question on cross-examination by defense counsel as follows:

Q. [Singleton] [j]ust told you it took place in the dining facility?

A. That's correct.

An examination of Kampa's complete testimony fails to provide anything else that would bolster the assertion of an inconsistent statement by Singleton regarding where the 4 February sale occurred. We conclude that Singleton's alleged inconsistent statement on where the sale occurred is merely the confusion of the DST agent

---

1. Of course no one in the CID had authority to make such an arrangement with the appellant. See Article 15, UCMJ. From our reading of the record, however, it appears that someone in the CID interceded with the appellant's company commander and the "deal" was honored.

2. The trial judge instructed the court as follows:

As to the question of credibility of witnesses. The final determination as to the weight of the evidence and the credibility of the witnesses in this case rests solely upon you as members of the court. In determining the weight and value to be given to the testimony which you have heard, you should carefully scrutinize the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief. Consider each witness' intelligence, the acuteness of his powers of observation, the accuracy and retentiveness of his memory, his apparent candor, his appearance and deportment. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which if at all, each witness is either supported or contradicted by other evidence in the case. You should consider the probability of each witness' statements; the opportunity the witness had to observe and to be informed as to the matters respecting which he gave testimony.

resulting from a response to a leading question on cross-examination.

With respect to how many people were present in appellant's room at the time of the sale, cross-examination brought out that there is a discrepancy between Singleton's testimony at the Article 32 investigation in which he testified "there were others in the room", and his trial testimony, that in addition to himself and the appellant there was one other person in the room and he was in bed asleep. We find this discrepancy to be minor and not an unusual one considering the time that had lapsed and the fact there were two sales in the same location but at different times. From our reading of the entire record we conclude that Singleton's testimony as a whole is consistent and unequivocal. That he may have been confused on how many people were present at one of the two sales does not change this. Accordingly, the failure of the military judge to give an instruction on this inconsistency is harmless.

## II. Failure of the Military Judge to Instruct on Proper Consideration to be Given Informant Testimony

 The appellant's assertion of error—that the military judge's failure to instruct the court members sua sponte as to the proper consideration of the testimony of paid informants—is based upon his analogy to the treatment to be accorded accomplice testimony.[3] He apparently would have this court establish a rule that requires military judges to instruct members sua sponte on the proper consideration to be given to testimony of paid informants, as he contends is required in a case in which there is uncorroborated testimony from an accomplice. We might agree that special instructions should be given on request in any case where the evidence shows a witness is motivated to lie, or where testimony is pivotal and is inconsistent as well as uncorroborated, but we do not agree that instructions in terms of credibility, weight and reliability must always be given sua sponte with respect to the testimony of a paid informant.

In the appellant's case the government relied to a great extent upon the testimony of Specialist Singleton, who was working with the DST. While Singleton was not a paid informant in the sense that he received direct cash payment, the appellant asserts that his deal with the CID makes him one in fact. We see no significant difference with that traditional method of payment and the consideration given to Singleton in this case. He cooperated with law enforcement authorities only after being promised that his pending punishment under Article 15 would not include punishment, i.e., reduction in grade, that would disqualify him from eligibility to occupy government family quarters. The CID promise was kept by Singleton's commander after his participation in the 4 February drug buy from the appellant.[4] Accordingly, we will consider his status as analogous to that of a paid informant.

 Paid informants are competent witnesses at courts-martial. *United States v. Garcia,* 1 M.J. 26 (C.M.A.1975). Their use by law enforcement officials is widespread in drug cases and is not against public poli-

---

3. At a trial by court-martial a conviction cannot be based upon uncorroborated testimony given by an accomplice if the testimony is self-contradictory, uncertain, or improbable. Even if apparently corroborated and apparently credible, testimony of an accomplice which is adverse to the accused is of questionable integrity and must be considered with great caution. Paragraph 74a(2), Manual for Courts-Martial, United States, 1969 (Revised edition). When appropriate, the court members should be so instructed by the military judge upon request by the defense. *United States v. Moore,* 8 M.J. 738 (A.F.C.M.R.1980); *United States v. Baker,* 2 M.J. 360 (A.F.C.M.R.1977). An instruction is required, in the absence of a request, if the accomplice's testimony is of "pivotal importance" to the Government's case and the witness' credibility is seriously attacked. *United States v. Gilliam,* 23 U.S.C.M.A. 4, 48 C.M.R. 260 (1974); *United States v. Lell,* 16 U.S.C.M.A. 161, 36 C.M.R. 317 (1966); *United States v. Baker, supra.*

4. On 22 February 1980 he received Article 15 punishment in the form of a suspended reduction, suspended forfeitures and extra duty. The punishment was administered by his company commander.

cy.[5] *United States v. Kelker,* 50 C.M.R. 410 (A.C.M.R.1975); *United States v. Heitmann,* 46 C.M.R. 1242 (A.F.C.M.R.1973). Such persons are not accomplices per se and their testimony is admitted according to the usual rules. *United States v. Kelker, supra.* The weight and credibility to be accorded an informant's testimony is a matter for the determination of the court members, *United States v. Collier,* 1 M.J. 358 (C.M.A. 1976); *United States v. Lecappelain,* 9 M.J. 562 (A.F.C.M.R.1980), and an informant's credibility is not affected as a matter of law by the agreement with the government. *United States v. Garcia, supra.* The degree of credibility to which an informant is entitled, like any other witness, is dependent upon the influences and inducements he may have to swerve from the truth, his moral character, bias and any interest he may have in the outcome. *United States v. Peterson,* 48 C.M.R. 126 (C.G.C.M.R.1973). Consistent and credible testimony by an informant is sufficient by itself to support a conviction on a narcotics charge. *United States v. House,* 471 F.2d 886 (1st Cir.1973).

As a general rule instructions on credibility and effect of a witness' testimony must be specifically requested and the absence of a request for special instructions precludes consideration upon appeal. *United States v. Flippen,* 16 U.S.C.M.A. 622, 37 C.M.R. 242 (1967); *United States v. Lell,* 16 U.S.C.M.A. 161, 36 C.M.R. 317 (1966); *United States v. Chase,* 43 C.M.R. 693 (A.C.M.R. 1971); Fed.R.Crim.P. 30. This rule will not be applied, however, where such an omission would constitute "plain error." *United States v. Pond,* 17 U.S.C.M.A. 219, 38 C.M.R. 17 (1967); *United States v. Chase, supra;* Fed.R.Crim.P. 52(b).[6]

The appellant has cited no authority, and we have been unable to find any, that convinces us that a military judge must instruct the members sua sponte on the effect of a paid informant's testimony.[7] We are aware, however, that the Court of Military Appeals has held that the military judge is not required to instruct sua sponte on evidence as to an accused's good character, *United States v. Johnson,* 3 U.S.C.M.A. 709, 14 C.M.R. 127 (1954); *United States v. Schumacher,* 2 U.S.C.M.A. 134, 7 C.M.R. 10 (1953), and concerning an accused's character for truthfulness. *United States v. Robinson,* 11 M.J. 218 (C.M.A.1981). We believe that these matters are as significant to the issue of reasonable doubt as is the effect of the testimony of a paid informant.

Accordingly, we will adopt the views expressed by Judge Leventhal in *United States v. Kinnard,* 465 F.2d 566, 577–78 (D.C.Cir.1972) (Leventhal, J., concurring), concerning employed addict-informers. He would require an instruction on the proper consideration to be given an informant's testimony only on request and only when corroboration is lacking on a material aspect of the informant's testimony. With or without request, however, the trial judge should be sufficiently concerned and vigilant for circumstances in the case that would warrant giving the instruction, particularly when the only corroboration comes

5. The agreement here can be easily distinguished from the type condemned by the Court of Military Appeals in *United States v. Scoles,* 14 U.S.C.M.A. 14, 33 C.M.R. 226 (1963). See *United States v. Garcia, supra.*

6. For application of this rule in the Federal courts see *Hardy v. United States,* 343 F.2d 233 (D.C.Cir.1964), *cert. denied,* 380 U.S. 984, 85 S.Ct. 1353, 14 L.Ed.2d 276 (1965), in which the court refused to reverse when the trial judge declined a defense request to instruct the jury that testimony of a police informant with a criminal narcotics record should be received with care. The jury had received general instruction on credibility and the informant's testimony was corroborated by eyewitnesses. See *Fletcher v. United States,* 158 F.2d 321 (D.C.

Cir.1946). In *United States v. Griffin,* 382 F.2d 823 (6th Cir.1967), the conviction was reversed when the paid informer was a narcotic addict, his testimony was corroborated only in minor details and the trial court did not instruct the jury sua sponte. In *Griffin* the court found plain error.

7. The appellant's reliance on *Fletcher v. United States, supra* and *Cratty v. United States,* 163 F.2d 844 (D.C.Cir.1947) is misplaced. The court reversed only after the trial judge restricted defense inquiry into the credibility of an addict-informant, and refused to give a defense requested instruction concerning the informant.

from another person who was involved whether as participant or surveillant, in the use of undercover arrangements.

■ Therefore, as there was no request for additional instructions, and no objection to instructions was raised at the time of the trial, it will be necessary for this court only to determine whether their omission was plain error. Accordingly, the evidence presented by the government and Singleton's testimony in particular must be examined to see if that testimony was so critical and so suspect as to require an instruction by the military judge as to its evaluation and use. *United States v. House, supra; United States v. Griffin, supra; Williamson v. United States*, 332 F.2d 123 (5th Cir. 1964). The significance of Singleton's testimony is obvious, but despite appellant's assertion to the contrary, it was clear and straightforward. Moreover, it was generally consistent with his Article 32 investigation testimony and consonant with his actions and conduct at the time of his drug purchases from appellant as brought out by the testimony of the DST agents. He freely admitted to his own drug use (there is no evidence of drug addiction) and his motive for cooperating with the DST. The record establishes also that Singleton testified that he considered his Article 15 punishment was not lenient, that the second purchase from appellant was made after the punishment had been imposed and the three-month suspension period of the reduction in grade had passed without vacation at the time he testified against appellant. We therefore find that Singleton's testimony is believable and credible and that the failure of the military judge to instruct sua sponte on its effect was not plain error affecting substantial rights of the appellant.

### III. Sufficiency of the Evidence

■ We disagree with the appellant's assertion that there was insufficient evidence to establish his guilt. It is true that the government's case was based to a great extent upon the testimony of Singleton, an informant who was motivated to assist the DST for reasons other than just the obliga-

tion of responsible citizenship. Nevertheless, there was sufficient evidence before the court to support its finding of guilt beyond a reasonable doubt. The court members heard the witnesses, observed their demeanor, evaluated their relative credibility, and rejected appellant's claimed innocence. They were in the best position to judge the facts; their determinations cannot be lightly disregarded by this court and we decline to do so. *United States v. Frierson*, 20 U.S.C.M.A. 452, 43 C.M.R. 292 (1971); *United States v. Albright*, 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958); *United States v. Evans*, 6 M.J. 577 (A.C.M.R.1978), pet. denied, 6 M.J. 239 (C.M.A.1979).

### IV. Failure of Trial Defense Counsel to Represent the Appellant Adequately

■ The appellant also raises an issue of the adequacy of his trial defense counsel's representation because of his failure to call six witnesses "discovered" by, and present for the trial at the behest of, the appellant. This issue was raised before the convening authority who first took action on the record of trial in this case. It was also considered in the new post-trial review and action by the new convening authority ordered by this Court. Neither convening authority found merit in the issue. In a post-trial affidavit by the trial defense counsel he explained that after interviewing the witnesses on the morning of the trial he decided not to call any of them because he determined none could provide testimony that would significantly benefit the appellant's case.

From our review of the record of trial, the documents submitted by the appellant and the trial defense counsel's affidavit, we find that the trial defense counsel did not lack the requisite reasonable competence. *See United States v. Jefferson*, 13 M.J. 1 (C.M.A.1982). Moreover, we agree there were valid tactical reasons for not calling those particular witnesses. Finally, the record demonstrates a thorough and competent preparation for trial and an active, professional and vigorous conduct of the defense case during the trial. Accordingly, we find

no merit to the contentions of the appellant on the inadequacy of his trial defense counsel.

We have considered the remaining assertion of error based on multiplicity and find it to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge COHEN concur.