UNITED STATES

v.

Steven J. DEVINE, 037 44 5933, Boatswain's Mate First Class (E–6), U.S. Navy.

NMCM 91 1195.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 11 Jan. 1991.

Decided 19 Nov. 1992.

LT Lisa M. Higdon, JAGC, USNR, Appellate Defense Counsel.

LCDR Richard D. Zeigler, JAGC, USNR, Appellate Defense Counsel.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

Before WILLEVER, STRICKLAND and ORR, JJ.

STRICKLAND, Senior Judge:

The appellant was convicted, contrary to his pleas, of conspiracy, theft, and housebreaking in violation of Articles 81, 121, and 130, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 921, and 930, respectively. He was sentenced to a dishonorable discharge, confinement for two years, total forfeiture of all pay and allowances, and reduction to pay grade E–1. The convening authority approved the adjudged sentence. We have jurisdiction pursuant to Article 66(b), UCMJ, 10 U.S.C. § 866(b). The appellant raises seven assignments of error on appeal.[1] We con-

---

1. I. THE MILITARY JUDGE ERRED BY NOT GIVING AN ACCOMPLICE INSTRUCTION, *SUA SPONTE*, WHERE THE ONLY EVIDENCE AGAINST APPELLANT WAS THE TESTIMONY OF THREE ACCOMPLICES, ALL PREVIOUSLY CONVICTED PURSUANT TO GUILTY PLEAS SUBJECT TO PRETRIAL AGREEMENTS.
II. THE EVIDENCE WAS NOT SUFFICIENT TO PROVE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT.
III. APPELLANT WAS DENIED HIS DUE PROCESS RIGHT TO A SPEEDY PREFERRAL OF CHARGES.
IV. THE CONVENING AUTHORITY ERRED BY TAKING ACTION WHERE HIS STAFF JUDGE ADVOCATE FAILED TO ADVISE HIM REGARDING REQUIRED MATTERS AND HE HIMSELF CLEARLY MISUNDERSTOOD CRITICAL ASPECTS OF THE CASE.
V. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
VI. THE CONVENING AUTHORITY ERRED IN APPROVING FINDINGS OF GUILTY AS TO THE CHARGES WHERE THE MEMBERS NEVER ENTERED FINDINGS TO THE CHARGES. *But see United States v. Read,* 29 M.J. 690 (A.C.M.R.1989); *United States v. Timmerman,* 28 M.J. 531 (A.F.C.M.R.1989); *United States v. Logan,* 15 M.J. 1084 (A.F.C.M.R.1983). [Footnote omitted.]
VII. THE CONVENING AUTHORITY WAS DISQUALIFIED FROM ACTING ON THE CASE WHERE HE PREVIOUSLY GRANTED IMMUNITY TO AND ENTERED INTO PRETRIAL AGREEMENTS WITH GOVERNMENT

clude that they are all without merit and affirm.

## I

The appellant, a first class petty officer, was the section leader of a base security patrol unit at the Willow Grove Naval Air Station. Three subordinate sailors who worked for the appellant testified at trial that each of them, together with the appellant, had unlawfully entered various buildings and had stolen items from these buildings while on duty patrolling the air station. Some of the buildings from which thefts occurred included the Navy Exchange, the package store, and the Marine supply warehouse. These thefts were discovered subsequent to the appellant's transfer from Willow Grove when one of the sailors involved, who was suspected of another offense, gave a confession to the authorities and implicated the remaining individuals. Each of the three sailors who testified against the appellant at trial did so pursuant to a grant of testimonial immunity. The items alleged to have been stolen could not be corroborated as missing from the Navy Exchange, the package store, or the supply warehouse by virtue of the manner in which items were inventoried, although the items alleged to have been taken were verified as items carried by each of these entities.

## II

The appellant asserts that the military judge erred by not *sua sponte* giving an accomplice instruction to the members where the only evidence of the appellant's guilt was the testimony of three accomplices who had already been convicted of the same offenses and who testified under grants of immunity. He also alleges that the accomplices' testimony is uncorroborated and, even if corroborated, is self-contradictory, uncertain, or improbable. Thus, the appellant reasons that, despite the lack of a request for such an instruc-

tion from the trial defense counsel, plain error has been committed. We disagree.

■ There is no *sua sponte* duty of the military judge to give an accomplice instruction in each case in which such a witness testifies. *United States v. Stephen*, 15 C.M.A. 314, 35 C.M.R. 286 (1965); *United States v. Oxford*, 21 M.J. 983 (N.M.C.M.R.1986). The failure to do so, however, can result in plain error, *see* Rule for Courts–Martial (R.C.M.) 920(f), where the accomplice testimony is uncorroborated and is self-contradictory, uncertain, or improbable. *See generally United States v. Lell*, 16 C.M.A. 161, 36 C.M.R. 317 (1966); *Stephen; United States v. Lippincott*, 39 C.M.R. 932 (A.F.B.R.1968). The testimony of one accomplice may not corroborate the testimony of another accomplice. *United States v. Sanders*, 34 M.J. 1086 (A.F.C.M.R.1992); *United States v. Thompson*, 44 C.M.R. 732 (N.C.M.R.1971).

■ In this case, the trial defense counsel did not request a special instruction on accomplices nor did he object to the instructions given by the military judge. Thus, consideration of this issue on appeal is waived absent a showing of plain error. *See United States v. Schreiber*, 5 C.M.A. 602, 18 C.M.R. 226 (1955); R.C.M. 920(f). To determine whether plain error occurred, we must first consider whether the accomplices' testimony was corroborated. The three accomplices could not corroborate one another's testimony and, as pointed out by the appellant, none of the items alleged to have been stolen could be verified as stolen by inventory or by any other means. However, this does not end our analysis. There did exist partial corroboration of the testimony of each of the accomplices. The operations manager of the Navy Exchange testified and corroborated the testimony of each accomplice as to every detail concerning the alarm system, the manner in which the doors were secured, and the only feasible way the exchange could be entered without detection. All knew the sequence in which the alarm had to be deactivated by

WITNESSES. *United States v. Vickery*, 1 M.J. 1063 (N.C.M.R.1976); *but see United States v. Newman*, 14 M.J. 474 (C.M.A.1983); *United*

*States v. Walters*, 30 M.J. 1290 (N.M.C.M.R. 1990). [Footnote omitted.]

key and by hand prior to opening certain doors to the exchange. All knew of the system of securing the inside set of doors with a coded metal seal, and all knew that these doors could be bypassed by going through a false ceiling and going "over" the doors. While all of the accomplices worked for the air station security force, none of them ever worked for the exchange in the area of security. The appellant did, however, work for a time as a security guard in the exchange, and he would have gained the aforementioned knowledge. Thus, it is most probable that the accomplices gained this knowledge from the appellant and by actually breaking into the exchange.

Even if the accomplices' testimony was uncorroborated, we would still have to find it to be self-contradictory, uncertain, or improbable in order to find plain error. The appellant points out some uncertainties in the testimony of the accomplices; namely, the inability of Airman Recruit Coleman to recall the year in which these offenses took place and Seaman Recruit Bropst's minor inconsistencies relative to when he found out about stealing soda and candy from a canteen truck. The trial in this case took place over two years after some of the offenses were alleged to have occurred. Some inconsistencies are bound to appear under these circumstances, and considering the testimony as a whole, we conclude that these inconsistencies are not significant.

The appellant also argues that this testimony is improbable given the fact that he was a 4.0 sailor with an impeccable record and the accomplices were, in essence, convicted felons seeking additional relief in their own cases. It is true that each of the accomplices had already been convicted by a court-martial for their participation in these offenses, each was testifying under a grant of testimonial immunity, and the final convening authority's action had not been taken in at least one of the cases. Under these circumstances, one might infer that the accomplices might slant their testimony in order to benefit themselves, and that their testimony would thus be improbable. We believe that any such inference was clearly rebutted by the testimony of Airman Recruit Michaelis. Michaelis considered himself to be a good friend of the appellant, was at one time the appellant's roommate, socialized with the appellant after working hours, and even dated a relative of the appellant's wife. Michaelis did not want to testify against the appellant at trial, even though he had immunity, and only did so after being ordered to testify. We conclude that Michaelis' testimony was quite plausible in this situation.[2]

One additional factor must be considered before we make a determination as to the existence of plain error. The absence of a request for an accomplice instruction by the trial defense counsel raises an issue discussed in *Starks v. United States*, 316 F.2d 45 (9th Cir.1963). In *Starks*, the Court noted:

> [S]uch an instruction could well have been objected to by appellant's counsel. It could have been very harmful to appellant's defense. He claimed that he did not participate in the matter at all, and an instruction relating to the status of ... his accomplices could well be taken by a jury, even though artfully and carefully phrased by the court, as indicating that the court thought the appellant had participated with them in the offense. This is exactly opposite to the conclusion that appellant was asking the jury to reach. This may be why appellant's counsel did not ask for an instruction on the matter.

*Id.* at 47.

The situation is analogous in this case. The appellant testified in his defense, categorically denied all of the allegations, and stood on his character and prior record in the service. Characterizing the Government's witnesses as the appellant's "accomplices" would have sent the opposite message to the members which the defense

---

**2.** We note that simply because an accomplice has been convicted (of similar offenses of which the accused is charged) does not automatically render the accomplice's testimony improbable.

Since often-times the conviction of an accused must necessarily rest solely on the testimony of a co-actor, a rule to the contrary would preclude prosecution in many cases.

wished to convey. This, coupled with the fact that the military judge did give the standard instruction on credibility of witnesses and the fact the trial defense counsel characterized the witnesses as "convicted felons" who were not worthy of belief during closing argument, suggests to us that it may have been a conscious, tactical decision on the part of trial defense counsel to not ask for such an instruction.

Under all of the circumstances of this case, we hold that the failure of the military judge to *sua sponte* instruct on accomplices in the absence of a request for such an instruction was not plain error.

### III

The appellant asserts that he was denied his due process right to a speedy preferral of charges because the delay in preferral of the charges was in excess on one year from the date the Government received statements from the alleged accomplices. The appellant suggests that we apply the four factors enumerated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in deciding this issue. The appellant confuses his Sixth Amendment right to a speedy trial, as set forth in *Barker*, with his Fifth Amendment right to due process. It is the latter right which is in issue in this case. Thus, the test in *Barker* is irrelevant.

■ The statute of limitations is "the primary guarantee against bringing overly stale criminal charges." *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971) (citation omitted). The Supreme Court in *Marion*, however, recognized that the due process clause could require dismissal for oppressive pre-indictment delay. A breach of due process would only occur if the delay violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," and which define the "community's sense of fair play and decen-

cy." *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). What is required to substantiate a due process claim is proof of actual prejudice to the accused and a consideration of the reasons for delay. *Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2048. The type of prejudice with which the Court was concerned was whether the passage of time caused evidence to be lost, memories of witnesses to be impaired, or the loss of witnesses altogether. *Marion*, 404 U.S. at 321, 92 S.Ct. at 455.

■ The only actual prejudice alleged by the appellant is that he was deprived of several character witnesses from his command due to their deployment to the Persian Gulf. First, we note that ample evidence of the appellant's good military character, including the character of service at his most recent command, was before the members as a part of the appellant's service record book. Second, and more importantly, we conclude that any failure of these witnesses to be present was the fault of the appellant. As evidenced by the trial defense counsel's affidavit, the appellant represented to counsel that he was obtaining statements from members of his command. These statements could have been used as stipulations of testimony or as a means of requiring the actual appearance of the witness at trial. At a very late date, after the command deployed to the Persian Gulf, the appellant informed his counsel that he had not contacted these witnesses. Any delay in the preferral of charges in this case was not the proximate cause of the unavailability of these witnesses. Thus, we hold that the appellant was not denied due process by any delay in the preferral of charges.

### IV

We have carefully considered the remaining assignments of error and reject them as being without merit.[3] Accordingly, the

---

3. With respect to assignments of error II, IV, and V, we specifically note the following. We are convinced beyond a reasonable doubt of the appellant's guilt of the offenses of which he was convicted. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). We conclude that the error in the Staff Judge Advocate's advice failing to inform the convening authority that the military judge consolidated all of the conspiracy specifications and that the appellant was found not guilty of

findings and sentence, as approved on review below, are affirmed. A new court-martial order shall be issued to properly reflect the not guilty finding to Specification 1 of Charge II and to reflect that the seven specifications of Additional Charge I were consolidated by the military judge into a single specification of a continuing conspiracy.

Chief Judge WILLEVER and Senior Judge ORR concur.

Specification 1 of Charge II did not prejudice the appellant and modification of the court-martial order alone is the only remedy required. *See United States v. Graf,* 35 M.J. 450 (C.M.A. 1992). In applying the test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we conclude that there was no ineffective assistance of counsel in this case.